# DISTRICT COURT OF THE UNITED STATES,

FOR THE

# DISTRICT OF VERMONT,

## 1842.

---

DOWNER AND OTHERS *v.* BRACKETT AND OTHERS, IN THE MATTER
OF WILLIAM F. SPEAR.

The term *lien*, in common acceptation, denotes a legal claim, or charge, on prop-
erty, either real, or personal, for the payment of any debt, or duty, although
the property be not in the posssession of him, to whom the debt, or duty, is
due. Thus an attachment is denominated a lien in the statutes of this state;
and the term *lien* is used in the same sense in the act of Congress of 1841, es-
tablishing a uniform system of bankruptcy throughout the United States.

Under the bankrupt law of 1841 there is no distinction between a lien by judg-
ment and a lien by attachment; by the provisions of the act both are preserved;
and where, in this state, a *bona fide* lien by attachment has been acquired be-
fore the filing of the petition, the property may be taken in execution, whenever
judgment is obtained in the suit, whether before or after the filing of the peti-
tion, or before or after the decree of bankruptcy.

Ordinarily, where a suit is pending and property attached, when proceedings in
bankruptcy are commenced, nothing but proof of the debt under the bank-
ruptcy, unless it be the bankrupt's certificate of discharge, will prevent the
creditor from proceeding in his suit to judgment and execution;—and *quære*,
whether, if the certificate of discharge be pleaded in such case, the plaintiff
may not reply the fact of his lien, and have judgment, with the right to take
execution against the property attached.

In general, the proceedings in bankruptcy have relation to the decree of bank-
ruptcy, and not to the petition; all debts existing before and at that time are
proveable under the bankruptcy and are barred by the certificate of discharge.

Downer et al. *v.* Brackett et al.; *in re* Spear.

Where there was a petition in bankruptcy *in invitum*, and property had been attached on *mesne* process before the alleged act of bankruptcy was committed, and judgments had been obtained and the property seized on execution before the filing of the petition, but after the alleged act of bankruptcy, and no fraud or collusion was stated, or shown, it was held, that there was no valid ground for an injunction to restrain the sale of the property on the execution.

But an attachment by a creditor, previous to the decree of bankruptcy, but with notice of an act of bankruptcy having been committed by the debtor, or of his intention to take the benefit of the bankrupt law, will be a fraud upon the law, and will not create a lien protected by it. The pendency of the petition in bankruptcy will, of itself, be notice, so as to avoid any attachment made after the filing of the petition, and proof of actual notice will avoid an attachment made before. *Howes, Assignee of Holden* v. *Spalding*, Circ. Ct., 1844.

THIS was a petition for an injunction, stating that the petitioners, being creditors of William F. Spear, a trader, on the first day of September, 1842, filed their petition in bankruptcy in due form against the said Spear, alleging an act of bankruptcy to have been committed by him on the eighteenth day of August, 1842, and praying that he might be declared a bankrupt. The petition farther stated, that Charles Brackett, and the several other creditors named in the petition, on the fifteenth day of the same August, sued out writs of attachment against Spear, and caused certain goods, wares, and merchandize belonging to him to be attached thereon to a large amount; that on the twentieth day of August, 1842, judgments were rendered in the several suits against Spear, on his confession, executions taken out, and the goods attached were seized thereon; and that the goods were advertised to be sold on the executions on the third day of September, and would be then sold, to the great injury of the petitioners and other creditors of Spear, unless the sale should be stayed by injunction from this court.

PRENTISS, J. The general question presented in this case is one of much importance, affecting, as its ultimate decision undoubtedly will, to a very considerable extent, the rights and interests of many persons in this state. Viewing it in that light, I have given to the question all the consideration the time afforded me would allow, and have endeavored to form an opinion upon it with a single eye to its merits, and without indulging in any extraneous or irrelevant specu-

lations. I have not allowed myself to be influenced by any considerations arising out of the supposed policy of the bankrupt act, beyond what appears to be its policy from the act itself. To go aside of a written positive law, and reason upon an assumed and imputed general policy in regard to it, especially if there be no apparent ambiguity in the law, is, in my opinion, an unsafe and unsatisfactory mode of argument, in judicial questions. It is, as one of the present judges of England said of public policy as a ground of argument, like an unruly horse; when you once get astride it, you never know where it will carry you. The policy of the act, whatever it may be in respect to the distribution of the bankrupt's estate among his creditors, and whether more or less restricted, is to be collected from the provisions of the act itself, giving to all its parts a just construction. It is conceded, as it must be, that it is not the policy of the act to distribute the property of the bankrupt, *pari passu,* among his creditors, in ratable proportions, regardless of *all* existing liens, for that would be a contradiction of the act, at once direct, palpable and undisguised. It is admitted, that some liens are saved ; and if so, the question is, upon a fair interpretation of the act, what liens ? Are they those only, which are created by express contract, or are they all liens whatever, which are created or exist under the laws of the respective states ?

The act provides, " that nothing in this act contained shall be construed to annul, destroy, or impair, any lawful rights of married women, or minors, or any *liens,* mortgages, or other securities on property, real or personal, *which may be valid by the laws of the states respectively,* and which are not inconsistent with the second and fifth sections of this act."

" Any liens, mortgages, or other securities on property, real or personal," are very comprehensive terms, and are used without any qualification or limitation whatever, except what is imposed by reference to the laws of the states and to the provisions of the second and fifth sections of the act. The obvious reading would seem to be, that every kind of lien or security, upon real or personal property, is protected and preserved, where such lien or security is valid by the state laws, unless it be fraudulent within some of the provisions referred to, or be liable to the objection of creating such a preference, as those provisions prohibit.

76

Though *lien*, in a narrow and perhaps the more technical sense, signiffes the right, by which a person in possession of personal property holds and detains it against the owner in satisfaction of a demand, yet it has a more extensive meaning, and, in common acceptation, is understood and used to denote a legal claim or charge on property, either real or personal, for the payment of any debt or duty. Every such claim or charge is styled a *lien on the property*, although the property be not in the possession of him, to whom the debt or duty is due. The right of a vendor upon land as security for the purchase money, the right of a judgment creditor against the lands or goods of the judgment debtor, given by law in England and in many of the states in this country, and the right acquired by a creditor under an attachment of property, where the law of attachment exists, are all spoken of and treated as liens, in abridgments of the law, in elementary treatises, and in judicial decisions. Indeed, an attachment is expressly called and denominated a lien in the statutes of this state. Revised Statutes, chap. 49, § 53, and chap. 43, § 51.

That the term *lien* is used in the act in the latter sense, and that the bankrupt's property vests in the assignee, subject to any such lien, or claim, which others may legally have upon it, is not only evident from the term being applied in the act to real as well as personal property, but seems to receive countenance and support from other provisions of the act. The eleventh section gives the assignee power, under the direction of the court, "to redeem or discharge any mortgage, or other pledge or deposit, or lien upon any property, real or personal;" the third section authorizes him to defend any suit pending against the bankrupt at the time of the decree of bankruptcy; and the fifth section declares the proving of any debt by a creditor, under the bankruptcy, to be a waiver of any action pending therefor, or judgment recovered thereon; so that whatever lien may have been acquired by suit or judgment is thereby surrendered and given up. These provisions help to strengthen the conclusion, that it was the intention to save from the operation of the act every *bona fide* claim or charge on property, valid by the local laws, and not declared fraudulent or unlawful by the act, whether created by express agreement of the parties, or given by operation and effect of law. Even under the English bankrupt acts it has been held, that

the lien of the vendor of land was a valid charge upon it for the purchase money, though the vendee become bankrupt, and though there be no agreement for the purpose. *Chapman* v. *Tanner,* 1 Vern. 267. Vin. Abr. 74. Fonb. Eq. 380.

That a judgment was a lien, within the meaning of the bankrupt act of 1800, was decided in the case of *Livingston* v. *Livingston,* 2 Caine 300. The question arose under the thirty first and sixty third sections of the act, containing the following provisions,—" In the distribution of the bankrupt's effects, there shall be paid to every of the creditors a portionrate, according to the amount of their respective debts, so that every creditor, having security for his debt by judgment, statute, recognizance, or specialty, or having an attachment under any of the laws of the individual states, or of the United States, on the estate of such bankrupts, (provided there be no execution executed upon any of the real or personal estate of such bankrupt before the time he or she became bankrupt,) shall not be relieved upon any such judgment, statute, recognizance, specialty, or attachment, for more than a ratable part of his debt, with the other creditors of the bankrupt. Nothing contained in this act shall be taken, or construed, to invalidate or impair any lien existing at the date of this act, upon the lands or chattels of any person, who may become bankrupt."

The plaintiff's judgment was obtained before the passing of the act, and the question was, whether the lands held by the bankrupt, at the time of docketing the judgment, passed to the assignees, discharged of the judgment, or whether the judgment remained a subsisting lien, paramount to the claims of the general creditors. It was insisted, that the lien mentioned in the sixty third section contemplated only such liens as were created by the act of the party, as mortgages and the like; but the court held, that the section preserved all preceding liens, and that there could be no doubt that a judgment was a lien.

It will be perceived, that the act of 1800 associates attachments in the same class with judgments, statutes and recognizances, and treats them all as liens or securities on property, of like validity, and of like consideration in the law. But there is this difference to be observed between the right acquired by a judgment, and the right acquired by an attachment on original process. A judgment is only

a general security, not a specific lien like an attachment. A judgment, or the execution issued upon it, when delivered to the sheriff, binds all the property of the debtor,—his lands in the one case, and his goods in the other. An attachment binds only the particular property attached,—the property, if personal, being taken into the possession of the officer, and held in his custody, for the benefit of the creditor, to satisfy the judgment he may recover.

By the laws of this state property attached on *mesne* process, if real estate, is holden five-calendar months, and if personal estate, thirty days, from the time final judgment is rendered in the suit, to answer the judgment; and unless taken in execution within the time limited, the property is discharged from the attachment. This lien by attachment on *mesne* process is given by statute as a substitute for the lien by judgment, or award of execution, existing at common law; and undoubtedly an attachment here binds the lands or goods attached, during the time fixed by law, as effectually as a judgment, or execution sued out, binds lands or goods in England. The lien, to be sure, like every other lien whatever, is defeasible; but nothing will defeat it, but the plaintiff's failing in his action, or not taking out or levying his execution within the time prescribed after judgment, or the defendant's satisfying the judgment before sale of the goods or levy upon the lands.

The nature and effect of an attachment, as it exists in this state as well as in Massachusetts, is well stated in the case of *Grosvenor* v. *Gold,* 9 Mass. 209. It is there said, that by the laws of Massachusetts goods may be attached on the original process, and held thirty days after judgment, to be taken in execution; and if not seized on execution within that time, then, and not till then, the attachment is dissolved. And it is added, that by an attachment the plaintiff has a lien upon the subject of it provisionally, that is, to the amount of the judgment he may recover, and in so much is the absolute property of the defendant diminished. It is true, that in the case of an attachment, no more than in the case of a judgment, is the general property in the subject of the lien altered or changed, until execution executed. Until then, the general property continues in the defendant; and if he become bankrupt before the writ is executed, the property passes to and vests in the assignee, subject, nevertheless, to the existing lien.

It is a principle long ago settled in England, that a judgment and execution so far bind the goods, that if the judgment debtor die after the award of execution, the sheriff may proceed against the goods that were his, in the hands of his executors or administrators. Specious objections have been very often urged against this doctrine, and they have been as often overruled. In *Farrer* v. *Brooke,* 1 Mod. 188, it was objected, that, by the words of the *fieri facias,* it run against the goods of John Brooks, and by his death they ceased to be his goods, and became the goods of his administrator; and in *Parsons* v. *Gill,* 7 T. R. 21, note, it was urged, that the execution ought not to have been executed upon the executors of Gill, for that it imported only a command to take in execution the goods of Gill, and whatever was his, in his life time, upon his death ceased to be his, and became his executors', against whom the authority given by the writ did not .extend. In *Waghorn* v. *Langmead,* 1 B. & P. 571, it was farther urged, that the defendant died insolvent, leaving bond and other creditors, for whom the administrator was to be considered a trustee, and therefore the execution ought not to bind the goods; in *Bragner* v. *Langmead,* 7 T. R. 20, it was objected, that to give effect to the execution would be against the real justice of the case, because thereby one creditor would obtain an undue preference, to the prejudice of the other creditors; and in *Oades* v. *Woodward,* 7 Mod. 94, it was said to be a very inequitable thing; for by this means one creditor would run away with all, and leave the rest nothing, and this would be both against conscience and law, and a kind of fraud. But in all these cases, as had been uniformly adjudged before in others, it was held, that, the property being bound by the award of the writ before the death of the party, it might be taken in execution after; and in the latter case, Lord Holt, with all his legal acumen and depth of penetration, was not able to understand how it could be a fraud to get a just debt by due course of law.

The principle of these cases was adopted in Massachusetts, in the case of *Grosvenor* v. *Gold,* already cited, as applicable to attachments. In that case it was held, that goods attached on *mesne* process might lawfully be sold by the sheriff upon the execution, although the judgment debtor had died insolvent after the judgment and award of execution, and before the sale,—the court observing,

that undoubtedly goods in Massachusetts were as much bound by attachment, during the time they were holden, as goods in England were by and from the *teste* of the writ. The law, beyond doubt, is the same in this state, notwithstanding the statute provision, that, when the estate of any person deceased shall be insolvent and insufficient to pay all the debts owing, the estate shall be distributed, *pro rata*, among the creditors, in proportion to the sums to them respectively due. If the suit be pending at the time of the decease of the insolvent debtor, then, to be sure, by another provision of the statute, the suit is discontinued, and the attachment of course dissolved, in like manner as it is under the bankrupt act, where the creditor comes in and proves his debt. But under the latter act nothing but proof of the debt under the bankruptcy, unless indeed it be the bankrupt's certificate of discharge, will prevent the creditor from proceeding in his suit to judgment and execution.

The decisions under the English bankrupt acts have no application to the question arising in this case ; for those acts, instead of saving liens, as our act does, expressly avoid all judgment and execution liens whatever. The statute 21 Jac. 1, c. 19, § 19, enacts, " that creditors by judgment, statute, or recognizance, whereof no execution or extent is served or executed on the lands or goods of the bankrupt, before his becoming bankrupt, shall not be relieved for more than a ratable part of their just debt." Under this act liens by judgment or execution have no operation or effect whatever. If, therefore, the judgment debtor become bankrupt before execution executed, the property vests absolutely in the assignees, discharged of the lien, from the time of the act of bankruptcy committed ; and the creditor, having no subsisting lien, cannot lawfully take the property in execution. But if the property be seized upon execution, though not sold, before the act of bankruptcy, it does not pass to the assignees ; for by the seizure, without sale, the property is altered, and divested out of the debtor, before any title accrues to the assignees.

The clause in the act of Congress, as has been before observed, is general, saving all liens, without specification or distinction ; and it has been already seen, that an attachment, by the laws of this state, is as much a lien on property, as a judgment is by the laws of some of the other states. It is impossible to distinguish, under the

bankrupt act, otherwise than arbitrarily, between a lien by judgment and a lien by attachment; and from the provisions of the act, it appears to me that it was the intention to save both. It is not unreasonable, that it should be so; for although it is true, as a general rule, that equality is equity, yet when a legal preference has been *bona fide* gained by the superior diligence of any creditor, it is neither wrong nor unjust that such preference should be preserved. If an attachment be held not to be a lien, within the meaning of the act, but to cease to have any effect in case of the bankruptcy of the defendant, it is easy to see, that it may lead in practice to some strange and very anomalous consequences. Where property has been attached in an action for a personal injury, or for some other aggravated tort, the plaintiff may be deprived of all benefit of the attachment, by the defendant's becoming bankrupt pending the suit, though he can neither come in and prove his claim under the bankruptcy, nor share at all in the dividends the cancelling of his attachment will have contributed to augment. So where land attached by a creditor has been subsequently mortgaged, if the attachment be defeated by the defendant's bankruptcy, the benefit may enure, not to the general creditors, but entirely to the mortgagee.

Under the English statutes, the property of the assignees relates back to the time of the act of bankruptcy; and if such were the case here, under the act of congress, it would be clear, that any attachment, or levy of execution without prior attachment, after the act of bankruptcy, would be void as against the assignee. But there is no provision in the act to that effect. On the contrary, the act vests the property in the assignee from the time of the decree of bankruptcy.

The third section of the act declares, that all the property and rights of property, of every name and nature, of every bankrupt, except, &c., who shall by decree be declared a bankrupt, shall, by mere operation of law, ipso facto, *from the time of such decree*, be deemed to be divested of such bankrupt, and the same shall be vested, by force of such decree, in the assignee, who shall have all the rights, titles, powers, &c., to sell, dispose of and sue for the same, as fully as might be exercised by such bankrupt, before or at the time of his bankruptcy declared as aforesaid; and all suits then pending, in which such bankrupt is a party, may be prosecuted and

defended by such assignee, in the same way, and with the same ef-
fect, as they might have been by such bankrupt.

The fifteenth section also declares, that all deeds of land sold and
conveyed by the assignee, made in the manner provided therein,
shall be as effectual to pass the title of the bankrupt, as if made by
the bankrupt himself immediately before the decree of bankruptcy.

These enactments, it appears to me, are too strong and plain, too
positive and unequivocal, to be argued or explained away. They
seem to admit of but one meaning in relation to the point in ques-
tion, and appear to be so explicit and precise in regard to it, as to
leave, in the absence of any opposing provision, no room whatever
for construction. They treat the bankrupt as the legal owner of
the property to the issuing of the decree, and tie down the title of
the assignee to that time, so as to preclude its relation back. All
the property then owned by the bankrupt passes to and vests in the
assignee, and consequently all debts existing before and at the date
of the decree are provable under the bankruptcy, and all debts to
that time barred by the defendant's certificate of discharge. Still,
to some purposes, the rights of the assignee undoubtedly extend
back by relation. Though he is not actually invested with the very
property until the decree of bankruptcy, he may avoid many *mesne*
acts done to the prejudice of the general creditors,—such as fraud-
ulent preferences and payments, or fraudulent transfers in contem-
plation of bankruptcy, and other transactions fraudulent or void, on
general principles of law. Perhaps, too, the property in the inter-
mediate time, between the filing of the petition and the decree, may
be considered as remaining in the bankrupt in trust for the credi-
tors, or as in the custody of the law and under its protection. In
this view, the property would not be liable to be attached on *mesne*
process, or to be taken on execution without a prior lien, after the
filing of the petition ; nor, if taken before, would the transaction
be protected, if the attachment or execution be collusive, or, per-
haps, if there be notice of the act of bankruptcy, or of the inten-
tion of the party to petition for a decree. The transaction, like
payments or conveyances in contemplation of bankruptcy, might be
treated as a fraud upon the act and therefore void.

But where the attachment is not liable to any of the objections
mentioned, and a *bona fide* lien has been acquired before the filing

Downer et al. *v.* Brackett et al.; *in re* Spear.

of the petition, it would seem, that the property may be taken in execution, whenever judgment is obtained in the suit, whether before or after the filing of the petition, or before or after the decree of bankruptcy. The property, if holden at all, is holden to satisfy the judgment which may be recovered; and if the lien is saved by the act, the act must be so construed as to give full effect to the lien and secure to the creditor the full benefit of it. Indeed, I doubt whether the bankrupt's certificate of discharge, when obtained, notwithstanding the general operation given to it by the act, would be allowed in such case to prevent a recovery of judgment. If the certificate be pleaded in bar of the action, why may not the plaintiff reply the fact of his lien, and have judgment, with the right to take execution against the property attached? In some cases, at least, this must be allowed, or obvious injustice will be done. Where land attached has been afterwards sold, or mortgaged, or a subsequent attaching creditor has first obtained judgment, and levied, or may levy, upon the land, shall not the creditor, first in point of time, be allowed to proceed to judgment and have the benefit of his attachment? But however this may be, it appears to me, that at any rate there can be no doubt, in any view of the question, as to the right of the attaching creditor, where or wherever he has in fact obtained or may obtain judgment.

In the present case, the property was attached before the alleged act of bankruptcy was committed, and the judgments were obtained, and the property seized upon execution, before the filing of the petition, though after the act of bankruptcy. This being the case, and no fraud or collusion being stated or shown, there is, in my opinion, no ground for an injunction to restrain the sale of the property on the executions. But, as the principal questions here discussed have been otherwise decided by a most learned and accomplished judge, whose opinions are entitled to the highest consideration, and as the case is one of emergency, not admitting of any delay, the property being posted for sale to-morrow, it seems to be a proper discharge of my duty to grant the injunction; and I shall accordingly do so, with the understanding, that, on the motion to dissolve it, the question will be adjourned into the circuit court for final decision, so that the parties may suffer no injury from any error of opinion on my part.

77

Downer et al. *v.* Brackett et al.; *in re* Spear.

NOTE BY PRENTISS, J. In *Howes, Assignee of Holden,* v. *Spalding,* in the Circuit Court, October Term, 1844, PRENTISS, J., following out the intimations in the above opinion, held, and the decision was afterwards affirmed by the whole court on a motion for a new trial, that though the property of the bankrupt did not pass from him and vest in the assignee until a decree of bankruptcy, yet that an attachment by a creditor before such decree, with notice of an act of bankruptcy having been committed by the debtor, or of his intention to take the benefit of the bankrupt act, would be a fraud upon the act, and therefore not a lien protected by it; that the pendency of the petition in bankruptcy would of itself be notice, so as to avoid any attachment made after the filing of the petition, and proof of actual notice would avoid an attachment made before; that in the case before the court, it appearing that the creditor knew that a petition was in process of preparation, to be presented by the debtor, and the same being presented and filed on the same day, a few hours after the attachment, the notice was such as to deprive the attachment of any effect as a lien.

The questions and points of law discussed in the above case of *Downer et al.* v. *Brackett et al.,* and afterwards farther discussed in the *Matter of Christopher C. Rowell* and the *Matter of Timothy Reed,* which will be found in the succeeding part of this volume, have been finally settled by recent decisions of the Supreme Court of the United States. In 1849, in the case of *Peck* v. *Jenness,* 7 Howard 612, it was determined, that an attachment on *mesne* process, by which the property seized is made to await the result of the suit, constitutes a lien, which is saved by the proviso of the second section of the bankrupt act; and that if a certificate of discharge obtained under the act is pleaded in bar of the suit, the plaintiff may reply the fact of the attachment, and have judgment, with an award of execution against the property attached. And in *Shawhan* v. *Whewitt,* Ib. 627, it was decided, that an attachment by a creditor, with notice of the act of bankruptcy, or of the intention of the debtor to take the benefit of the bankrupt act, is not a valid lien, within the saving clause of the act.