# CHESHIRE,

## JULY TERM, A. D. 1845.

---

## PECK & a. *v.* JENNESS & a. in Error.

Those portions of the opinion in *Ex parte the City Bank of New-Orleans*, 7 Law Rep. 553 (3 Howard 292); which relate to the jurisdiction of the district courts in bankruptcy, can not be received as matters of authority absolutely binding upon the State courts.

The jurisdiction of the State courts is derived from the laws of the several States, and is independent of the bankrupt act, which neither limits nor enlarges it.

Creditors of a bankrupt having claims capable of being asserted in the State courts, may pursue their remedies there, notwithstanding their claims are debts capable also of being asserted under the bankruptcy.

The jurisdiction of the State courts over such debts is not a jurisdiction "in bankruptcy"; the creditors who pursue their remedies under it, adversely to the bankruptcy, are not creditors "who claim any debt or demand under the bankruptcy"; and the proceedings had upon their claims are not matters and things "done under and in virtue of the bankruptcy."

Mortgages and liens which are saved by the bankrupt act, may be enforced in suits within this jurisdiction; and the district courts can not interfere with or control the exercise of it.

The defendants pleaded discharges in bankruptcy. The plaintiffs replied an attachment upon the original writ, and prayed judgment against the property. The defendants rejoined that the district court, on the petition of the assignee, had ordered and decreed that the sheriff should deliver the goods to him, to be administered in his said capacity. *Held,* that the order and decree imposed no duty upon the sheriff, and that the rejoinder was not a sufficient answer to the replication.

ERROR, to reverse a judgment rendered in the common pleas. The original action was assumpsit, instituted October 8, 1842, by John S. Jenness, John Gage, and John E.

Lyon, against Philip Peck and William Bellows, the plaintiffs in error, who were partners in trade. It appeared from the record, that the writ was served October 10, 1842, by an attachment of the partnership property, and of the separate property of each partner. The defendants at the October term 1843, pleaded severally in bar of the further maintenance of the action. The plea of Peck set forth that on the 26th of November 1842, he being then a resident of Walpole in the county of Cheshire, presented his petition to the district court, &c., wherein he averred that he was a resident of said Walpole; that he was a copartner in two firms, under the style of Bellows & Peck, and Philip Peck & Co., consisting of himself and William Bellows; that he was owing debts in his private capacity, and as a copartner in said firms; that a list of his creditors and their demands was annexed, and a schedule of his property, private and copartnership; that he was unable to meet his engagements, and therefore applied for the benefit of the act of congress, entitled, &c., and prayed that he might be decreed a bankrupt, and to have a certificate of discharge from all his debts provable under the act. The plea then averred that Bellows, his copartner, on said 26th of November, presented his petition, setting forth similar matters in relation to himself, and containing a similar prayer for a decree and discharge. And it then averred, that upon the presentation of each of said petitions such proceedings were had, that after due notice to all persons interested to appear, &c., it was ordered and decreed by the district court holden on the 21st day of December 1842, that said Philip Peck and William Bellows, and each of them, be declared bankrupts, in their private capacities and as copartners of said firms; that on the 28th of December 1842, Aaron P. Howland was duly appointed assignee, &c., and accepted the trust, &c.; that Peck afterward presented his petition to the district court, praying for a discharge and certifi-

cate, &c.; that notice was ordered, &c., and due publication made; and that on the 21st of June 1843, it was ordered and decreed, that he be and was fully discharged of and from all his debts owing by him in his private capacity, and as partner, &c., and he averred that the promises alleged in the declaration were made before the 26th of November 1842, were provable under the act, and were not made in any fiduciary capacity. The Plea of Bellows contained similar averments in relation to his petition, &c.

The plaintiffs replied to the several pleas, that before any act of bankruptcy, and before the petitions, they sued out their writ of attachment, &c., which was served October 10, 1842, by a deputy sheriff, who attached and took into his possession, and still retained the custody of, divers goods, &c., and made due return of the writ, &c., wherefore they prayed judgment to be levied of the goods and chattels attached. The defendants rejoined, that on the 25th of July 1843, Howland, the assignee, presented a petition to the district court, setting forth that the plaintiffs had caused said goods to be attached; that such attachment was not a valid lien on the goods as against him as assignee; that by reason of it neither the sheriff nor his deputy could lawfully detain or keep the goods from him; and praying the court to order and decree that the sheriff and his deputy should render an account to him of all the goods attached, and deliver the goods to him, or the proceeds of the sales thereof; and that on the 15th of January, 1844, after due notice and a hearing of the parties, it was ordered and decreed by the district court, that the sheriff and his deputy should deliver the goods to said Howland, to be administered in his said capacity, &c. Wherefore they prayed judgment, whether the plaintiffs ought to have judgment to be levied as prayed for in their replications. The plaintiffs demurred generally to the rejoinders.

Judgment was rendered for the plaintiffs, March term 1845, to be levied upon the goods, according to the prayer of the replications. The defendants thereupon sued this writ of error, and assigned for error that their pleas and rejoinders were sufficient in law to preclude the plaintiffs from maintaining their action, and that the replications were no sufficient answer, &c.

*Handerson,* and *Edwards,* for the plaintiffs in error, relied upon *Ex parte The City Bank of New-Orleans,* 7 Law Rep. 553, and submitted the case without argument.

*C. B. Goodrich,* of Massachusetts (with whom was *Chamberlain*), for the defendants in error. 1. An attachment on mesne process before and on the 19th of August 1841, constituted by the laws of New-Hampshire a valid lien or security. I rely upon statutes and decisions cited by this court in *Kittredge* v. *Warren,* and *Kittredge* v. *Emerson,* one of which is Laws of New-Hampshire, Ed. of 1830, p. 101, "All lands, &c., belonging to any person, shall stand charged with the payment of all the just debts of such person, as well as his personal estate, and shall be liable to be taken in execution for the satisfaction of the same." These statutes clothe any person who avers himself a creditor, with a power available at his pleasure over the estate of the supposed debtor for his individual benefit, defeasable if he fail to prove himself a creditor. That an attachment constitutes a lien, appears also from *Tyrell's Heirs* v. *Rountree,* 1 McLean 95; S. C. on Error, 7 Peters 464; *Wallace* v. *McConnell,* 13 do. 151; *Beaston* v. *Farmers Bank of Delaware,* 12 do. 128; *Hubbard* v. *Hamilton Bank,* 7 Metcalf 340; *Kilburn* v. *Lyman,* 6 do. 299.

2. If the proposition that an attachment is a lien or security by the Laws of New-Hampshire, is admitted, it necessarily results that it is within the proviso of the

bankrupt act, because the proviso, *quoad* the subject-matter thereof, adopts the law of the State. The cases from the Supreme Court of the United States show that an attachment had been regarded as a lien and security, as a vested interest, prior to the 19th of August 1841. Congress must be presumed to have known the extent of these decisions. When they saved liens, securities, and other vested interests, their presumed intention was to protect, at least, those things which the judiciary of the United States had clothed with the character of liens, securities, and vested interests. Congress, prior to the 19th of August 1844, regarded attachments as liens, &c. 1 Story's Laws of United States 58; Jud. Act 1789, sec. 12; do. 821, 822, Act of 1801; do. 743, Bank. Act 1800, ch. 19, sec. 31. It is a lien without reference to the proviso, because the act passes nothing more than the bankrupt might convey, fraud excepted. The proviso does not save liens and securities of the common law, of equity, of admiralty, or liens by the laws of the United States, but liens and securities valid by the laws of the States respectively. The law of New-Hampshire is to be ascertained by the decisions of its highest judicial court. *Shultz* v. *Moore*, 1 McLean 524; *Green* v. *Neal*, 6 Peters 291; *Bank of United States* v. *Longworth* et al., 1 McLean 35; *Livingston* v. *Moore*, 7 Peters 542; *United States* v. *Ringgold*, 8 do. 160; 1 Story's Laws of United States 76, Act of April 2, 1790; *Bas* et al. v. *Steele*, 3 Wash. C. C. 381; *Swift* v. *Tyson*, 16 Peters 1; *Jackson* v. *Chew*, 12 Wheaton 153. Courts in bankruptcy have admitted the principle. 5 Law Rep. 59, 61, 506, 393, 365, 357, 361, 445; 6 do. 314, 351, 446, 109; *Ex parte City Bank of New-Orleans*, 7 do. 564, 565; *Kilburn* v. *Lyman*, 6 Metcalf 299. Upon this point we may be permitted to advert also to the opinion of Hon. J. Mason, upon the determination of *Kittredge* v. *Warren*, that the decision of the State court was conclusive upon the subject of attachments; and the court well know the

weight which attaches to the opinions of that eminent jurist. The authorities cited in *Ex parte Foster*, do not sustain the decisions of the circuit court. Nor do the reasons given there sustain those decisions. See 1 Story's Laws of United States, 550, 1798, chap. 92, sec. 16; 2 do. 1334, 1813, chap. 16, sec. 28; do. 1813, chap. 55, sec. 6; *Davidson* v. *Clayland*, 1 Har. & Johns. 546; *Hull* v. *Smith*, 1 N. Y. Legal Observer, Oct. 1, 1842; 1 Story's Laws of United States, 541, July 11, 1798, chap. 88, sec. 15; *United States* v. *Graves*, 2 Marshall's Decisions 381; *Dutton* v. *Morrison*, 17 Vesey 201; *Ex parte Freeman*, 1 Ves. & Bea. 41; *American Exchange Bank* v. *Morris Canal and Banking Company*, 6 Hill 366, 367; *In re Reed* v. *Prentiss*, 3 N. Y. Legal Observer 266, June, 1845; *Buxton* v. *Mardin*, 1 T. R. 80. This court is the exclusive judge whether it can render judgment to be levied of a particular portion of the defendant's estate. *Steward* v. *Dunn*, 11 Meeson & Welsby 63; 1 T. R. 81, cited above.

3. What is the effect of the order of the district court of the United States for the District of New-Hampshire, as stated in the defendant's rejoinder? 1. It does not purport to control the real estate. 2. The district court sitting in bankruptcy, or as a court of equity, has no jurisdiction to control the courts of this State, or its executive officers. This general position, *quoad* the court, is admitted in many cases. *Ex parte City Bank* admits it. Does the protection extend to the clerk, and to the sheriff, while in court? If not to be seized here, the shield of this court does not lose its power, and the clerk and the sheriff are as free as the court. 2 Story's Eq. 66. If this jurisdiction reaches the parties, the clerk, and the sheriff, the court is not saved. See 2 Story's Eq. 176, 177; *Ex parte Bellows & Peck*, 7 Law Rep. 131; *Aston* v. *Heron*, 2 Mylne & Keene 390. 3. The property, at the time of Howland's petition to the district court, for the order relied upon, was *in custodia legis*, and consequently could not be reached

by the District Court or its officers. *Ex parte Bellows &amp; Peck*, 7 Law Rep. 131; *Harris* v. *Dennie*, 3 Peters 294; *Atlas Bank* v. *Nahant Bank*, 23 Pick. 488; *Hubbard* v. *Hamilton Bank*, 7 Metcalf 340. The property can not be subject to two jurisdictions at the same time. The attachment under the State authority withdraws it from the reach of the process of the district court. *Hagan* v. *Lucas*, 19 Peters 400. 4. A court of equity has no jurisdiction where the party seeking its aid has an adequate remedy at law. Jeremy's Eq. 338. Here is adequate remedy, by sale, by suit, by defence here, and appeal by error to the Supreme Court of the United States. 5. Jenness and others, the attaching creditors were not parties to the proceedings before the District Court, and not bound by its order. *Marshall* v. *Beverly*, 5 Wheat. 313; *Coun* v. *Penn*, do. 424; *Russell* v. *Clark*, 7 Cranch 69; *Mechanics Bank of Alexandria* v. *Seton* et al. 1 Peters 306.

The rejoinder is a departure. If an attachment is a lien, this proceeding can not divest it. This is an attempt, in fact, to overrule and control the judgment of the courts of the State, in a case rightfully before them. 2 Marshall 381. The State court acquired jurisdiction of the parties and the property, and by subsequent proceedings in a foreign tribunal, an attempt is made to divest this jurisdiction. But if the district court can not control the court here, can it control its officers, seize upon its exchequer, take the property, and leave the court here to pronounce a judgment which is to act upon nothing? The order is void for want of jurisdiction. *Shriver's Lessee* v. *Lynn*, 2 Howard 43; *Thompson* v. *Tolmie*, 2 Peters 163. Courts having concurrent jurisdiction can not be ousted by proceedings in another court. *Stearns* v. *Stearns*, 16 Mass. 171. A judgment which is void may be impeached by third persons, to whom it is prejudicial, by plea and proof. *Downs* v. *Fuller*, 2 Metcalf 135; *Smith* v. *Rice*, 11 Mass. 507; *Davol* v. *Davol*, 13 do. 264.

Thus far I have argued upon an admission as to the jurisdiction of the district court broader than it has. I submit that it has no jurisdiction over parties not claiming under the bankruptcy, and that a creditor who does not prove is not subject to its action; that it can not enjoin parties from prosecuting their suits, rightfully commenced, in a State court; that it has no jurisdiction in equity, except as auxiliary to its bankrupt jurisdiction, restricted as above.

The jurisdiction depends upon the sixth section. There is no new jurisdiction in the eighth. See *Ex parte Pease,* 1 Rose 242; S. C. 19 Ves. 46; *Ex parte Botcherley, in re Whitehead,* 2 Glynn & James 369; *Ex parte Timbrell, in re Brown,* Buck 105; Archbold on bankruptcy 350. This question of jurisdiction is not foreclosed by *Ex parte City Bank of New-Orleans.* That decision was not unanimous. Much of the opinion is extra judicial. Moreover the City Bank had become party to the bankruptcy, and its proceedings were instituted after the bankruptcy, facts which do not exist here. The reasons of that opinion are insufficient. If Congress had designed to confer such jurisdiction they would have said so, and not left it to be argued out. The rights of debtor and creditor are peculiarly matter of State regulation. The proceedings may extend beyond two years, for suits may be brought up to that time. The limitation in the sixth section escaped the court. The case admits that the State courts may proceed unless stopped.

4. The proceedings in bankruptcy, as exhibited in the several pleas of the defendants, are void for want of jurisdiction in the court which entertained them. 1. The several petitions of Peck & Bellows to be declared bankrupt, are not verified by the oaths of the petitioners. The statute prescribes this, and without such petition the jurisdiction can not be exercised; it does not exist. *Ex parte Bollman & Swartwout,* 4 Cranch 75; *Sharp et al* v. *Speir,* 4

Hill's N. Y. 76; 2 Christian's Bankrupt Law 20, 22; Cooper's Bankrupt Law 165; *Buckland et al* v. *Newsame,* 1 Taunt. 477; *Alderman Backwell's Case,* 2 Ch. Cases 191; *Sackett* v. *Andros,* 5 Hill's N. Y. 330; *Elliot et al* v. *Peirsoll,* 1 Peters 328; *Stephens* v. *Ely,* 6 Hill 608; Archbold on Bankruptcy 346; *Thatcher* v. *Powell,* 6 Wheaton 119. 2. The several petitions for the benefit of the act, do not aver that the petitioners owed debts not contracted in any fiduciary capacity. He who would avail himself of the act must aver that he owes debts of the character embraced by it. 1 Chitty's Pl. 223, 9th Am., 7th Lond. Ed.; Archbold on Bankruptcy 9. So is the form used in Maryland. See, also, Owen on Bankruptcy 25; *Wheeler* v. *Townsend,* 3 Wend. 247; *Wyman* v. *Mitchell,* 1 Cow. 316; *Frary* v. *Dakin,* 7 Johns. 79. Twenty days' notice at least, as the act requires, of the hearing upon the several original petitions to be declared bankrupt, was not given. The plea says due notice. *Sharp* v. *Johnson,* 4 Hill's N. Y. 92; *Lessee of Walden* v. *Craig's Heirs,* 14 Peters 154; *Stockton* v. *Hasbuck,* 10 Martin 472; *Young* v. *Capen,* 7 Metcalf 289; *Slacum* v. *Simms,* 5 Cranch 363.

5. The several original petitions do not aver an insolvency of the firm, and they pray no decree against the firm. And the decrees thereon, so far as the same could legally be made, do not subject the partnership property to the action of the bankrupt statute. The property of a bankrupt passes by the decree. An individual decree passes individual property only. The petitions in this case present no issue as to the insolvency of the firm, and no notice has ever gone forth of the alleged insolvency of the firm, or of any proposed decree against them as such. *Taylor* v. *Fields,* 4 Ves. 396; *Ex parte Ruffin,* 6 Ves. 126; *Young* v. *Keighly,* 15 Ves. 557; *Ex parte Peake, in re Lightoller,* 1 Mad. Ch. 191; Ram on Law of Assets, 792, *et seq.; Ex parte Rowlandson,* 1 Rose 419; *Campbell* v. *Mullett,* 2 Swanston 551, 575; *Egbert* v. *Wood,* 3 Paige

517. Upon this point see also *Barker* v. *Goodair*, 11 Ves. 78; *Dutton* v. *Morrison*, 17 Ves. 201; S. C., 1 Rose 213; *Brickwood* v. *Miller*, 3 Merivale 279; *In re Waitt*, 1 Jacob & Walker 585; *Ex parte Farlow*, 1 Rose 421; *Caldwell* v. *Gregory*, 1 Price 119; *Harrison* v. *Sterry*, 2 Rose 149; 5 Cranch 289; 1 N. Y. Legal Observer, 6, 40, 41; 1 N. Y. Legal Observer, 327; *Gibson* v. *Stevens*, 7 N. H. 352; *Morrison* v. *Blodgett*, 8 N. H. 238. The court can not decree more than is prayed for. *Shriver* v. *Lynn*, 2 Howard 43.

PARKER, C. J. Several objections have been raised to the pleas filed in the original action, which we do not find it necessary to consider. They have been urged with great force and ability, and some of them would seem to be fatal, unless the replications are construed as admitting the validity of the discharge generally, by praying judgment against the property. The plaintiffs were entitled to such a judgment, only upon the ground that the defendants had a discharge in bankruptcy, and that such special judgment was necessary to enable them to avail themselves of their lien or security upon the property attached. Perhaps, under this state of the pleadings, the alleged defects in the pleas, if they exist, should be regarded as omissions in matters of form, of which the plaintiffs can not take advantage in this case; but the consideration of these questions may be waived.

We have already settled, so far as our decision can settle the question, not only that an attachment upon mesne process constitutes a lien by the laws of this State, but that it is also a lien or security upon property, within the saving clause of the second section of the bankrupt act of August 19, 1841. It is not necessary, therefore, to enter into a further discussion of that subject; but we may remark that were further matter in support of that conclusion desirable, it is found in the additional authori-

ties to which we have been referred by the industry and research of the counsel for the defendants in error in the present case. Without pursuing that part of the subject farther, we proceed to consider whether the rejoinder, which sets forth an order of the district court upon the sheriff, to deliver up the property to the assignee, takes this case out of the principle of the cases decided in this State.

The rejoinder does not state that there has been any compliance with the terms of that order, and it may, therefore, be inferred that the property attached is still in the hands of the sheriff, and in the custody of the laws of the State.

Since the decision of *Kittredge* v. *Emerson*, the case *Ex parte City Bank of New-Orleans* (reported 7 Law Rep. 553), has been determined in the Supreme Court of the United States, and the plaintiffs in error rely upon the opinion delivered in that case, as sustaining the present suit. That case settles nothing in relation to attachments or liens. There is nothing in it in conflict with our decision in *Kittredge* v. *Warren*, nor with so much of the opinion we expressed in *Kittredge* v. *Emerson*, as relates to those subjects. Assuming the doctrine of those cases, that an attachment is a lien or security upon property within the proviso of the second section of the bankrupt act, to be correct, it is not perceived how the order of the district court, unexecuted, could affect the right or the duty of the State court to render judgment and enforce the security. The property remained in the hands of the sheriff, under the attachment, and the court had the power to render a judgment which would preserve and give effect to the security which the creditors had obtained by it.

The abstract of the case *Ex parte City Bank of New-Orleans* contains these propositions: " The jurisdiction conferred on the district courts by the sixth section of the bankrupt act, over all cases and controversies between

Peck *v.* Jenness.

the bankrupt and his creditors, and between the creditors and the assignee, is not limited to creditors who prove their debts in bankruptcy, but extends to all whose debts constitute present subsisting claims, capable of being asserted in any form under the bankruptcy." "The district courts possess full jurisdiction to suspend and control proceedings in the State courts, instituted by any creditor or party adversely interested, to enforce his rights or obtain remedial redress against the bankrupt or his assets, by acting upon the parties through the instrumentality of an injunction or other remedial proceedings in equity, upon application by the assignee, and a proper case for such interference made out." "The prosecution or defence of any such proceedings in the State courts is placed under the discretionary authority of the district courts." 7 Law Rep. 553, 554.

Assuming the doctrine thus quoted to be sound, and that the district court may control proceedings in the State courts, the order set forth in the rejoinder does not attempt so to do, unless it be supposed that the delivery of the property would defeat the suit, which certainly does not necessarily follow. The order does not stay the suit, and as the district court, if it took possession of the property, would be bound to enforce the security and apply the property in satisfaction of the debt, if one existed, the obvious mode in which to ascertain whether a debt existed, and to ascertain its amount and enforce the security if it existed, would be to permit the creditor to proceed to judgment in the suit by which the security was obtained, and through which, from its very nature, it was, by the laws creating it, to be enforced. The district court, if it had a right to control the proceedings, must take some measures to satisfy the lien. What those measures should be, unless to direct the plaintiff to ascertain the amount of his debt by a judgment and to apply the property in satisfaction of it when rendered, does not

appear. A question might certainly arise, if the suit were to be defeated, how the lien or security, which originated upon the service of the writ (and according to the law of the State was dependent upon the prosecution of the suit and the rendition of a judgment), is to be preserved and enforced. The case *Ex parte Foster*, certainly seemed to look to the destruction of the suit, by pleading the discharge as an effectual means of defeating the lien or security which was dependent upon it. If the district court had authority to make the order, was bound to enforce the lien, and might control the proceedings in the State court; it would seem that removing the property subject to the security, it should remove the suit on which the security depended—should remove the principal as well as the incident.

But we do not place our decision in this case upon these considerations. Those portions of the opinion in *Ex parte the City Bank of New-Orleans*, of which we have cited the abstracts, claim from us some further examination. That case decides that " the supreme court possesses no revising power over the decrees of the district courts, sitting in bankruptcy;" and that it "is not authorized to issue a writ of prohibition to the district courts, except in cases where they are proceeding as courts of admiralty and maritime jurisdiction." So far as this, it is matter of authority. Those were the points in issue in the case ; which was an application for a writ of prohibition. Other matters were discussed at the bar, and were involved in the previous proceedings in the district court, but the decision of those matters was in no way necessary or important to the conclusion that the supreme court had no power to issue a writ of prohibition. And upon that part of the case, which is the part upon which the plaintiffs in error rely, we may say that we do not feel required to receive, and for reasons which we shall state we can not take, the particular views expressed in the

Peck *v.* Jenness.

opinion delivered, as matter of authority, decisive of this case.

That part of the case relating to the jurisdiction of the district courts, of which we have already cited the material portions of the abstract, as published in the Law Reporter, is not upon the principal points involved in this case, which are the authority of the district court to issue this order upon the sheriff to deliver the property, and its effect.  If it be supposed that the district court had the right to issue the order, the effect of it upon this suit remains to be settled.   And it has been argued here, that that case does not decide the question whether the district court had the right to make an order on the sheriff to deliver the goods, so long as they were in his custody under the laws of the State.   The bench of the Supreme Court at the time of the decision of that case was not full, and it is understood that the court were not unanimous in the opinion delivered.   The course of reasoning in an opinion, and incidental positions not necessary to the decision of the case, do not always receive the sanction of all the members of the court, even when no dissent is expressed ; and although entitled to great respect, this consideration might be sufficient to show that such reasoning and conclusions upon collateral points do not, under such circumstances, come to us with the weight of a binding authority.

But there is still another and a conclusive reason why we can not receive the part of the opinion to which we have referred, as a guide to direct our judgments, and that is, that we can not reconcile the different portions of it, so as to regulate our action according to it.   In one portion it seems to take from the State courts all jurisdiction of any suit against the bankrupt, after a decree in bankruptcy, by asserting an exclusive jurisdiction in the district and circuit courts over all such cases.   And in a subsequent portion it expressly admits the jurisdiction of

the State courts over such suits, and their authority to render valid judgments, but asserts a superior jurisdiction in the district court to suspend or control those proceedings at its will, making the jurisdiction of the State courts in fact subservient to that of the district court.

It has heretofore been supposed that the language of the sixth section of the act, providing that the jurisdiction conferred by it on the district court " shall extend to all cases and controversies in bankruptcy arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy," &c., was limited to such creditors as came in and proved their debts under the bankruptcy, or instituted some proceedings, relying upon the fact of bankruptcy to sustain them, or having reference to the petition. Such was substantially one of the objections taken in the argument of the case of the City Bank. But that position seems to have been distinctly denied. It is said, " We do not so interpret the language. When creditors are spoken of " who claim a debt or demand under the bankruptcy," we understand the meaning to be, that they are creditors of the bankrupt, and that their debts constitute present subsisting claims upon the bankrupt's estate, unextinguished in fact or in law, and capable of being asserted under the bankruptcy in any manner and form which the creditors might elect, whether they have a security by way of pledge or mortgage therefor, or not." (7 Law Rep. 563.) And this seems to lie at the foundation of the opinion in that case, except so far as the matter of prohibition is concerned.

The great question, which in fact is the basis of all the rest, is this; what is the jurisdiction of the district court? And this depends upon what is comprehended within the terms " in bankruptcy," " under the bankruptcy," and " in virtue of the bankruptcy." The district court had jurisdiction of " all cases and controversies in bankruptcy,"

where creditors claimed "any debt or demand under the bankruptcy," and of "all acts, matters, and things, to be done under and in virtue of the bankruptcy." The opinion extends the construction of these terms, so as to embrace not only all debts and demands of creditors who actually assert a claim, in some mode, having for its foundation the petition and decree of bankruptcy and the jurisdiction of the district court consequent thereupon, but, as we have just seen, to all debts and claims capable of being so asserted; and it makes this an exclusive jurisdiction in the district and circuit courts; for in another part of the opinion, referring to the eighth section of the act, and the concurrent jurisdiction there conferred upon the circuit court, of all suits which may or shall be brought by any assignee of the bankrupt against any person claiming an adverse interest, or by such person against the assignee, &c., we find it said, "of course, in whichever court," (circuit or district) "such adverse suit should be first brought, that would give such court full jurisdiction thereof, to the exclusion of the other. But in no shape whatsoever can this clause be construed otherwise to abridge the exclusive jurisdiction of the district court over all other "matters and proceedings in bankruptcy arising under the act, or over all acts and matters and things to be done under and in virtue of the bankruptcy." (7 Law Rep. 562.) And again, "Prompt and ready action, without heavy charges or expenses, could be safely relied on, when the whole jurisdiction was confided to a single court in the collection of the assets, in the ascertainment and liquidation of the liens and other specific claims thereon, in adjusting the various priorities and conflicting interests, in marshaling the different funds and assets, in directing the sales at such times and in such a manner as should best subserve the interest of all concerned, in preventing, by injunction or otherwise, any particular creditor, or person having an adverse interest,

from obtaining an unjust and inequitable preference over the general creditors by an improper use of his rights or his remedies in the State tribunals; and finally, in making a due distribution of the assets, and bringing to a close, within a reasonable time, the whole proceedings in bankruptcy. Sound policy, therefore, and a just regard to public as well as private interests, manifestly dictated to Congress the propriety of vesting in the district court full and complete jurisdiction over all cases arising, or acts done, or matters involved, in the due administration and final settlement of the bankrupt's estate; and it is accordingly, in our judgment, designedly given by the sixth section of the act." (7 Law Rep. 570. See, also, page 568.)

If then by "creditors who claim any debt or demand under the bankruptcy," all creditors are in fact intended, whose "debts constitute present subsisting claims upon the bankrupt's estate, unextinguished in fact or in law, and capable of being asserted under the bankruptcy"; and if the debts and demands against the bankrupt, capable of being so asserted, are to be deemed debts and demands "under the bankruptcy," as they must be in that case, the conclusion seems to follow, that the district and circuit courts have exclusive jurisdiction of all such debts and suits. The opinion, as we have shown distinctly, asserts this, and we have no doubt that the act confers upon the courts of the United States exclusive jurisdiction of all suit and proceedings "in bankruptcy." The necessary result of this doctrine must be, that the jurisdiction of the State courts over any debt or demand capable of being asserted under the bankruptcy, would be ousted by the decree of bankruptcy. They would not have a right to enforce any lien or mortgage, or to entertain jurisdiction of any suit or demand, fiduciary or otherwise, capable of being proved under the bankruptcy; for such demand or suit would be a demand and proceeding

under the bankruptcy and in bankruptcy, and therefore within the exclusive jurisdiction of the district court, or the exclusive concurrent jurisdiction of the district and circuit courts. On this hypothesis, no injunction would be necessary to restrain proceedings in the State courts. All such proceedings, after the decree of bankruptcy, would be without jurisdiction, and might well be treated as nullities.

But a position, that the State courts have no jurisdiction over debts and demands capable of being proved under the bankruptcy, is entirely inconsistent with the bankrupt act, with *Ex parte Foster, Ex parte Bellows & Peck,* and even with other portions of *Ex parte the City Bank of New-Orleans,* for it is there admitted that the courts of a State may entertain jurisdiction of suits upon such debts. The opinion is explicit upon that point. Speaking of the asserted jurisdiction of the district court to suspend or control proceedings in the State courts, brought by any creditor or person having an adverse interest, it is said, "But because the district court does possess such a jurisdiction under the act, there is nothing in the act which requires that it should, in all cases, be absolutely exercised. On the contrary, where suits are pending in the State courts, and there is nothing in them which requires the equitable interference of the district court to prevent any mischief or wrong to other creditors under the bankruptcy, or any waste or misapplication of the assets, the parties may well be permitted to proceed in such suits and consummate them by proper decrees and judgments, especially where there is no suggestion of any fraud or injustice on the part of the plaintiff in those suits. The act itself contemplates that such suits may be prosecuted, and further proceedings had in the State courts." (7 Law Rep. 567.) And the reason why injunctions have been granted to stay proceedings in the State courts has been, that the rights of the assignee, and of the other creditors,.

would be concluded by a judgment obtained there in favor of any particular creditor.

The jurisdiction of the State courts over debts capable of being proved under the bankruptcy, being admitted, the inquiry arises, how has this jurisdiction been obtained? It is very clear that it was not conferred by the bankrupt act. That does not purport to confer any jurisdiction in bankruptcy upon the State courts, and a question might have arisen, whether it could have done so had Congress attempted it. *Martin* v. *Hunter's Lessee,* 1 Wheaton 337. It neither enlarges nor limits their jurisdiction. The authority to the assignee to prosecute and defend, given by the act, admitting that it may be exercised in the State courts, is not a grant of jurisdiction to those courts over the subject matter, but authorizes the assignee to resort to such jurisdiction as they may have had before, in consequence of the transfer of all the rights and property of the bankrupt to him, and of the duties thereby devolved upon him. The jurisdiction of the State courts, it is not to be doubted, is derived from the laws of the several States in which they are situated. It existed before the passage of the bankrupt act, and it is entirely independent of it, although the provisions of the act must be enforced as the paramount law in all cases where they come in question in the administration of the ordinary jurisdiction. The bankrupt act neither purports to interfere with the exercise of the jurisdiction conferred by the laws of the several States upon the State tribunals, nor to authorize the courts of the United States to interfere with it, except in such manner as is provided by the general laws in other cases. There is no provision to be found purporting to give any such authority. In this view of the matter, creditors of a bankrupt having claims capable of being asserted in the State courts, are left at full liberty to resort to those jurisdictions, and to pursue their remedies there, notwithstanding those claims are

debts capable also of being asserted under the bank-
ruptcy.

But as the jurisdiction in such cases was conferred by
the State laws, existed before the passage of the bankrupt
act, and was not limited or enlarged by that act, it will
follow that it is not a jurisdiction in bankruptcy; that the
creditors who resort to it by suit, are not creditors "who
claim a debt or demand under the bankruptcy"; and that
the proceedings had upon their claims are not matters and
things done "under and in virtue of the bankruptcy."
How then is it made to appear, that "the prosecution or
defence of such suits in the State courts is obviously
intended to be placed under the discretionary authority
of the district court?" The right to control the bank-
rupt, and the assignee, obviously gives no such power.
It must be derived from the doctrine that the proceedings
in the State courts are proceedings in and under the bank-
ruptcy, of which the district court has jurisdiction, al-
though the case is pending in the court of another gov-
ernment, or it must be founded, as we have heretofore
supposed it was, upon some alleged necessity of the case.
If proceedings under the bankruptcy are confined to those
which have for their object the collection and the distri-
bution of the assets among the persons who claim as cred-
itors of a bankrupt, and those proceedings which are inci-
dental to, and subservient to that object, the prosecution
of suits by creditors claiming adversely to the bankruptcy,
does not come within that description; and creditors may
waive their rights under the bankruptcy, and take such
other remedy in the courts of the State as the forms of
proceeding there will allow, the bankrupt act being re-
garded, like other laws of the United States, as the para-
mount law, so far as it applies to each particular case.
The assignee being appointed under the bankruptcy, the
district court has jurisdiction over him, and may control
him in the prosecution or defence of any such suit; but

the adverse party, who claims nothing under or by virtue of the bankrupt act, and the court upon which the act confers no jurisdiction, with its officers, stand upon a different ground.

For the reasons suggested, we have thought that the different portions of the opinion to which we have adverted, the one alleging that all creditors having present debts capable of being asserted under the bankruptcy, are creditors "who claim a debt or demand under the bankruptcy," and the other admitting the jurisdiction of the State courts over demands thus capable of being asserted and proved under the commission, can not stand together; and we have had to choose between them. The first, so far as we are aware, is new, and in our judgment not warranted by the phraseology of the act. It ousts, in our view, as we have said, the jurisdiction of the State courts, over all debts capable of being proved under the commission. The latter has not only been acted upon every where, but has been fully sustained by the district court and Supreme Courts of the United States, in the cases referred to, and is admitted in the language of the act itself.

Adopting the position that the State courts have a jurisdiction over such cases, not founded upon the bankrupt act, or the bankruptcy, we conclude that mortgages and liens saved by the act may be enforced under it; and discharges may be pleaded, or other defence made, under the laws of the United States, or the State. But injunctions or orders can not be issued by the district courts to stay proceedings or defeat the jurisdiction, because that court has no supervisory jurisdiction by the bankrupt act, and because injunctions are prohibited by a general law of the United States, and the case of a bankrupt furnishes no exception to that law. And congress having neither conferred nor limited the jurisdiction of the State courts, the plea that it is necessary to interfere with and control the

Peck *v.* Jenness.

exercise of that jurisdiction, on account of any of the requirements of the bankrupt act, can not avail, because the act contemplates no such necessity; and it is evident that no such necessity exists, because the act must have been administered in Pennsylvania, and in Vermont since the decision of *Downer* v. *Brackett* (5 Law Rep. 392), without any such interference. The judgment in the State courts against a bankrupt, rendered in pursuance of their jurisdiction, must have the same faith and credit as is given to their judgments in other cases where they have jurisdiction, and may be enforced by the court rendering it in the same manner. And if a judgment is founded upon an erroneous construction of the bankrupt act it may be reversed.

It is not necessary to deny that Congress possesses the power to confer an authority such as is claimed. It is sufficient that that body has not attempted its exercise. Cases may undoubtedly be put to show that a power to restrain and control proceedings in the courts of the States would enable the courts of the United States to administer their jurisdiction more conveniently; but those extreme cases neither confer authority on the courts of the United States, nor take away that existing in the State courts. Much less can they show a repeal of a positive prohibition upon the former.

In the view we have taken of the case, it is hardly necessary to say, in conclusion, that we are of the opinion that the order of the district court, set forth in the rejoinder, imposed no duty upon the sheriff, and that it furnishes no answer to the replication.

*Judgment affirmed.*

NOTE. The judgment in this case was affirmed, on error, in the Supreme Court of the United States. See 7 Howard's Sup. Court Rep. 612.