COXKLING, District Judge.
In the case of Hezekiah Thayer (reported in the Cayuga Patriot of June 22, 1812) it was decided that no lien can be acquired by the institution of a suit by creditors bill in the court of chancery of this state, which will prevail against the title of an assignee of the estate and effects of the defendant under a decree of bankruptcy founded on a petition filed in this court before the commencement of such suit. With that decision I am entirely satisfied; and as far as I have been informed, it has generally been acquiesced in as sound. It is clear, that the property and rights of property of the bankrupt which It is declared by the third section of the bankrupt act shall, by force of the decree of bankruptcy, be divested out of the bankrupt, and vested in the assignee, are such property and rights of property as he had at the time of the filing of his petition. But the .important question remains to be decided, at what stage of the proceeding, when instituted in good faith and without collusion with the bankrupt, before the filing of the petition in bankruptcy, it becomes effectual. in favor of the complainant as against the assignee under a decree of bankruptcy made in pursuance of a petition subsequently .filed. Is it from the time of the commencement of suit by filing the bill and service of process? or, from the entry of the order for the appointment of a receiver? or, not until an actual assignment by the defendant to the receiver? This I have found to be a question of no little difficulty and embarrassment.
On the one hand, it is the duty of the court to protect the general creditors against
all claims of individual creditors inconsistent with the objects and policy of the act; and on the other hand it is no less the duty of the court to abstain from interfering with claims falling within the just scope of the last proviso of the second section of the bankrupt act. The proviso is in these words: “Provided, that nothing in this act contained shall be construed to annul, destroy, or impair any lawful rights of married women or minors, or any liens, mortgages, or othei securities on property real or personal, which may be valid by the laws of the states respectively, and which are not inconsistent with the second and fifth sections of this act.” In giving a construction to the terms “liens” and “securities” in this enactment, I can perceive no ground on which the courts would be warranted in limiting them to claims recognised and enforced in courts of law, as contradistinguished from those rec-ognised only in equity. Reliance was placed, at the argument, on the definition of the term “lien” usually given in the English books, namely, “a right to possess and retain a thing until some charge upon it is paid or removed.” This is the definition of a lien at law. It is defective when used in reference to the jurisprudence of this state, and of most of the other states of the Union, in not aptly describing one of the most common and important liens under our laws — that of a judgment creditor on the lands of his debtor; which consists in a right to sell the lands at once under a fieri facias, and .not, as in England, to receive the rents and profits of a moiety of them under an elegit. In respect to personal estate, this definition is strictly true, because the lien upon personal property is recognised at law to exist only in connection with the possession or right to possess the thing itself, and ceases when the possession is voluntarily given up. A familiar illustration of a lien of this description is that which exists in favor of artisans and others who have bestowed labor and services upon the property, in its repair, improvement and preservation. Liens at law generally arise, either by express agreement of the parties, or by the usage of trade, which amounts to an implied agreement, or by mere operation of law. See 1 Story, Eq. Jur. § D06,' and 2 Story, Eq. Jur. § 1210. “But,” says Mr. Justice Story (2 Eq. Jur. § 1217), “there are liens recognised in equity, whose existence-is not known or obligation enforced at law, and in. respect to which courts of equity exercise a very large and salutary jurisdiction.” In regard to these liens, it may be generally stated, .that they arise from constructive trusts. They are, therefore, wholly independent of the possession of the thing to which they are attached, as a charge or incumbrance; and they can be enforced only in courts of equity. The usual mode of enforcing a lien in equity, if not discharged, is by a sale of the property to
*166 which it is attached. Among the liens of this description, enumerated by the learned author, is that which the vendor of land has on the land for the amount of the purchase money, not only against the vendee himself, and his heirs, and other privies in estate, but also against all subsequent purchasers, having notice that the purchase money remains unpaid. And with regard to this equitable lien, at least, it seems to be settled in England that the assignees of a bankrupt are bound by it — because, as the master of the rolls said in the case of Mitford v. Mitford, 9 Ves. 100, the assignment by the commissioners, like any other assignment by operation of law, passes the rights of a bankrupt precisely in the same plight and condition as he possessed them. See Sugd. Vend. (3d Lond. Ed.) c. 12, p. 406; 2 Story, Eq. Jur. § 122S; [Bayley v. Greenleaf] 7 Wheat. [20 U.S.]46; and the authorities there cited. This shows that no distinction is made in this respect under the English bankrupt laws between liens in equity and at law; and the reason assigned, it will be seen, is equally applicable to all liens. The principle is, that the assignee of a bankrupt is deemed to take not as a purchaser for a .valuable consideration without notice, but as a mere volunteer. Now, it is worthy of remark, that the third section of our act, under which the assignee acquires his title, if it does not expressly' recognise this principle, is at least in perfect harmony with it. It declares, that the assignee, in virtue of the decree of bankruptcy, shall become invested with all the property and rights of property of the bankrupt, and “shall be vested with all the rights, titles, powers, and authorities, to sell, manage, and dispose of the same, and to sué for and defend the same, subject to the orders and directions of such court, as fully, to all intents and pur-' poses, as if the same were vested in, or might be exercised by, such bankrupt before or at the time of his bankruptcy declared as aforesaid; and all suits in law or in equity, then pending, in which such bankrupt is a party, may be prosecuted and defended by such assignee to its final conclusion, in the same way, and with the same effect as they might have been by such bankrupt.” It is to be observed, also, that the terms “liens, mortgages or other securities,” are used in the proviso in question without any other express limitation than that imported by the reference in the last clause of the proviso to the second and third sections 'ff the act.. The reference to the second section is clearly for the purpose of guarding against any eonstructipn of the saving which would give effect to liens, &c., created or given in contravention of the provisions of that section, but which independently of it would be valid by the laws of the state; such for example, as a bond and warrant of attorney, or a mortgage executed by a debtor in contemplation of bankruptcy and. for the purpose of giving a preference to one or more of his creditors over the general creditors. The reference to the fifth section is for.the purpose of more fully ensuring a compliance with its provisions designed to secure equality among all the creditors “coming in and proving their debts under the bankruptcy;” it being by that section, among other things, declared, that “no creditor or other person, coming in and proving his debt or other claim, shall be allowed to maintain any suit at law or in equity therefor, but shall be deemed there5 by to have waived all right of action and suit against such bankrupt; and all proceedings already commenced, and all unsatisfied judgments already obtained thereon, shall be deemed to be surrendered thereby.” There is nothing therefore in this limitation to exclude equitable liens from the operation of the proviso. It is clear, moreover, that it was not intended to use the words “liens” -in the proviso, in any precise definite sense, because the laws of the state in which, the question arises in any case, are expressly referred to and adopted as the test by which the question is to be determined. Thus by the Revised Statutes of New York-, a lien is expressly given on ships and vessels on account of work done and materials furnished in their building and repair. And if I mistake not, a similar lien is also given by a later act in favor of house builders: and in Massachusetts what is called the “mechanics’ lien” is given by the local law. These liens may or may not be given by the laws of other states. But where they are given, there can be no doubt of their being1 embraced in the saving of the bankrupt act: Nor can I discover any good reason founded in abstract justice or in the policy of the bankrupt act, for making a distinction in this respect between equitable and legal liens. Liens in equity are as meritorious as those at law, and it would be as unjust to disregard the one as the other. And to give effect to either as against the general creditors of a bankrupt would equally conflict with the policy of the bankrupt act
The proceedings in the court of chancery of this state by what is familiarly known as a “creditor’s bill,” is a highly stringent remedy in favor of judgment creditors given (or recognized), and regulated by statute;- and its operation and effect are to be determined by reference to the decisions’of the state courts, so far as they furnish an intelligible guide. It is limited to judgment creditors, and can be resorted to by them only after they have exhausted their remedy at law, by a fruitless effort to obtain satisfaction by a writ of fieri facias. Its especial object is to discover and reach the property of the judgment debtor, not subject to execution at law. No one doubts, that at some stage of it, the prosecuting creditor ac-; quires an exclusive right to satisfaction out of the property of the defendant when it is' *167 not bound by any prior lien. Tbis right can be nothing less than a lien valid by the laws of the state; and the only question is at what stage of the proceedings does it attach. And upon this point the decisions of the courts appear to me to leave no room for doubt It has been repeatedly decided that-such lien is acquired at the commencement of the suit; that is to say, by the filing of the bill and the service of a subpoena. It is sometimes called a “preference,” sometimes a “priority,” sometimes simply a “lien,” and sometimes a “specific lien;” and it has uniformly been held to prevail over any subsequent voluntary assignment by the debtor; and, what is still more pertinent, and, as it seems to me, ought of itself to be nearly decisive of the question in this court, over a subsequent assignment under the insolvent acts. 2 Paige, 333; Id. 567; 20 Johns. 554; 4 Johns. Ch. 687; Hayden v. Bucklin [9 Paige, 512], recently decided by the chancellor, in which it is decided that the lien is not created by the mere filing of the bill alone, but that the service of a subpoena is also necessary. The only case I have met with, which seems to militate at all against this doctrine, is that of Lansing v. Easton, 7 Paige, 3G4. In that case it is said that a judgment creditor may levy on the property of the defendant which is the proper subject of a levy and sale on execution, notwithstanding the pendency of a suit against him by creditor’s bill brought by another judgment creditor, at any time “before the title of the defendant in such property is equally divested, by an order for a sequestration thereof, or for the appointment of a receiver.” But there is nothing in this case, properly understood, which conflicts with the other cases to which I have referred. The remark I have mentioned is, in fact, but a repetition of the language of one of the general rules framed and promulgated by Chancellor Walworth several years before, under a comprehensive power given to him by statute for that purpose. I am not fully apprised of the policy which dictated this rule. But the particular and more appropriate design of a creditor’s bill is to enable the creditor to appropriate such property of the debtor as is not liable to seizure by fieri facias; and as the practice is to require the defendant to assign to the receiver all his property, whether subject to execution or not, it was probably thought but just to other creditors to take care that no unnecessary impediment should be thrown in the way of their ordinary legal remedy. The right thus reserved of levying on the property of the defendant after the commencement of the suit, is, therefore, but a particular exception, which tends the more clearly to establish the general rule.
My conclusion then is, that by the institution, and diligent prosecution, of a suit by a creditor’s bill, without collusion with the defendant, and in good faith, the complainant acquires a lien on the property of the defendant which is not divested by a decree of bankruptcy entered upon a petition filed by or against the defendant, subsequently to the full commencement of the suit. I am not called upon now to trace out this doctrine to all its legal consequences. The bankrupt act is now the law of the land, and is alike obligatory upon the state and the national courts. I understand it to be a settled rule of procedure in equity that when, pendente lite, the defendant’s interest in the subject matter of the litigation becomes vested by operation of law in another, as by an assignment in bank1-ruptcy, the complainant is bound to make such other person a party to the suit. Sedgwick v. Cleveland, 7 Paige, 287. This rule and the authority given to the assignee by the third section of the act to prosecute and defend all pending suits in which the bankrupt is a party, will secure justice to the general creditors of bankrupts against attempts by individual creditors to obtain undue advantages by resorting to the state court of chancery, and leaves to this court the less apology for the exercise of questionable powers. It being a settled principle in this court and, as far as I am informed, in all the national courts, that a decree of bankruptcy, when granted, and the title of the assignee acquired under it, relate back to the time of filing the petition, and embrace all the property the petitioner then had; — it follows, I imagine, that all steps taken by the complainant between the time of filing the petition and the entry of the decree, (if indeed he ought to be allowed during the interim to proceed at all,) are to be considered as taken at his peril, and are not to be deemed binding on the assignee. If the complainant, after filing his bill and obtaining an injunction, fails to prosecute his suit with proper diligence and to obtain the appointment of a receiver, the case of Osborn v. Heyer, 2 Paige, 342, is an authority for saying that his injunction will be dissolved, and his lien superseded. See, also, 4 Paige, 574. If the suit shall appear to have been commenced at the instance of the bankrupt — or by collusion with him, in contemplation of his bankruptcy, for the purpose of securing a preference to the complainant, it would be a fraud upon the bankrupt act, and could not be sustained. And if it should appear to have-been resorted to by the complainant after being informed that the defendant was about to apply for the benefit of the bankrupt act, or after notice of a prior act of bankruptcy, committed by him, and of the intention of another creditor to petition to have him declared a bankrupt, it would deserve grave consideration whether such a proceeding ought to be upheld.
It is proper to add. in conclusion, that I do not consider this decision as at all conflicting with that of the circuit court for the Massachusetts district, in Ex parte Foster [Case No. 4,9G0), which has so justly been regarded as of.very high authority, and on which so- *168 much reliance has been placed in the cases now before the court. The copious learning by which Mr. Justice Story has illustrated, the subject and fortified his conclusion upon the particular case before him, has naturally enough led to a misapprehension of the scope of the decision. If, for example, the question before that court had been whether a levy by writ of fiez-i facias on the property of the petitioner, made before the filing of his petition, was to bo held valid and effectual against the proceeding in banla-uptcy, the case in my judgment, is far from warranting the inference that the decision would have been ad-vei-se to the judgment creditor. The claim set up by the creditor in the case of Foster was founded on an attachment upon mesne process, and could give at most but an inchoate conditional lien. No judgment had been obtained, and the attaching creditor might never be able to pi-ove that he was entitled to .a judgment. The court considered it entirely clear that if the defendant should obtain his discharge pending the suit and before judgment, he or the assignee would be entitled to plead such dischaz-ge in bar of the suit. Upon this ground it was held, and as it seems to me correctly held, that the plaintiff had not obtained such a lien as it was the intention of the act to pi-otect; and that it was the duty of the district court, as a court of equity, sitting in bankruptcy, so far to restrain him in his race of diligence, while the bankrupt proceedings were in progress, as to pi-event him from obtaining a judgment which would overreach and defeat the just rights of other creditors, and the right of the bankrupt, if entitled to a discharge, to plead it in bar of the suit. This was a very different case from that of a suit by creditor’s bill, in which the complainant is seeking, not for the first time, a claim against the defendant, but rather to obtain satisfaction of a claim already established. It is a resort to the court for the discovery and application of the defendant’s property in conformity with the judgment of a court of law already pronounced, and of which it would have already given the complainant the truth if it had possessed the power.
The several cases pending before the court differ in respect to the stages that have been z-eached in the proceedings in chancery .when the petitions in bankruptcy were filed. But they all agree in having been fully commenced before the petition, and therefore under this decision fall within the same category. The petition in each case must be dismissed.