IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

### AT OCTOBER TERM, 1847.

---

### HARTMAN VREELAND v. GEORGE W. BRUEN.

1. The saving in the 2d section of the U. S. Bankrupt Law of 1841, of " all liens which may be valid by the laws of the States respectively," is not restricted to common law liens, or conventional liens, but extends as well to liens created by local statutes, or their operation ; it also extends to liens that are inchoate, or not settled, as well as to those settled in amount.

2. The only question in such case is, whether there is a lien by any valid law of the State.

3. The attachment law of New Jersey creates a lien upon the property attached, both real and personal, from the service of the attachment in favor of the plaintiff and other applying creditors.

4. That lien on the personal property is dissolved upon the debtor's appearing and giving bond for the return of the personal property according to the statute, the plaintiff and creditors must then look to the bond only, unless a new lien is created by placing an execution in Sheriff's hands before the defendant has aliened it.

214

Vreeland v. Bruen.

5. Before the act of May 30, 1820, *R. L.* 733, the lien on the real estate was also lost by defendant's perfecting his appearance; but the 3d section of that act preserves the lien on the real estate in all cases, until the debt of the plaintiff is satisfied, his action discontinued, or judgment against him therein.

6. If, pending an attachment against real and personal property, the defendant applies for, and obtains his bankrupt's discharge, then dissolves the attachment by giving bond, appearing and accepting a declaration, and to it pleads his discharge, the plea and discharge are good, so far as his personal liability and personal property are concerned; but a special judgment will be given for plaintiff, to be satisfied out of the real estate attached only.

The plaintiff sued out of Hudson county Circuit Court a writ of attachment, returnable to the term of September, 1842, against the defendant as a non-resident debtor, in a plea of trespass on the case, and under it the defendant's property, both real and personal, was attached. At the return of the writ the usual rules were taken, and auditors were appointed who adjusted the accounts of several creditors who had duly applied for that purpose. In June Term, 1843, and before final judgment, the defendant appeared to the suit of the plaintiff and of the other applying creditors, and having filed his bond, with proper security, as directed by the statute, the court set aside the attachment and the proceedings thereon. The plaintiff thereupon (as did the other creditors), filed his declaration, to which the defendant pleaded that on the 29th day of November, 1842, (being after suit brought) he petitioned the District Court of the United States, for the District of New Jersey, for the benefit of the bankrupt law, on the 20th of December following was declared a bankrupt, and on the 18th day of April, 1843, obtained his discharge by decree of that court, which discharge he pleaded in bar, averring that plaintiff's demand accrued before the petition was filed, and was provable under the proceedings thereon. The plaintiff in his replication admitted the proceedings and discharge under the bankrupt act, as set forth in the plea, but in answer, alleged that prior to the filing of the petition, viz: on the 24th of June, 1842, the writ of attachment was served, and certain property and estate of the defendant was by virtue thereof attached, which thereby became subject to the lien thereof for the plaintiff's demand, and

Vreeland v. Bruen.

was not freed from said lien by the discharge in bankruptcy, and prays judgment for his damages, to be levied of the estate so attached, and not of any other property of the defendant, nor upon his person.

To this replication the defendant filed a demurrer, and assigned under it several special causes of demurrer; to this demurrer there was a joinder by the plaintiff.

The special causes of demurrer set forth are 1st, That the matters alleged in the replication are immaterial, as the *plaintiff's demand and defendant's liability were discharged by the decree in bankruptcy. 2d. That the replicatian is a departure from the declaration. 3d. It shows no lien within the proviso of the bankrupt act; and 4th. That the decree divested the defendant of the property, and vested it in the assignee.

After hearing the argument upon this demurrer, the Judge (HORNBLOWER, C. J.) that held the Hudson Circuit Court, although of opinion that the demurrer ought to be overruled, yet considering it a case of doubt and difficulty (on account of conferent decisions in other courts), directed a case to be stated, and certified it to this court for their opinion.

The cause was argued on the case certified, before WHITE-HEAD, CARPENTER, and RANDOLPH, JJ.

*Hornblower*, and *Bradley*, for plaintiff.

*Vroom*, and *W. Pennington*, for defendant.

*Hornblower* argued in support of Replication.

1. That the *lien* created by *our* attachment laws, both upon real and personal property, was within the saving clause of the bankrupt law. (For reasons assigned in opinion at Circuit.) (*a.*)

2. That whatever might be the opinion of this court as to the nature of the *lien* upon the personal property, there could not, under our statute of the 30th May, 1820 (§ 3, *Elm. Dig.* 27), be any doubt, as to the validity of the lien upon real estate.

_Note (a.)_ See opinion at end of case. The late Chief Justice, after leaving the bench, had, in this case been retained as counsel *to support* his opinion at the Circuit Court.

Vreeland v. Bruen.

3. That if the *lien*, upon either description of property, real or personal, was saved by the Bankrupt law, it was sufficient for the plaintiff in attachment, as in either case he would be entitled, upon this *demurrer*, to judgment for his debt to be levied of the property attached.

4. That this is a proceeding *in rem*, and the defendant by his own shewing had *now* no title to the property attached—since, by declaring himself, or by being decreed a bankrupt, all his property and estate, by force of the acts of Congress (of which this court was bound to take judicial notice), had become vested in his assignee—and the question, whether the *lien* created by the attachment act, was saved by the bankrupt law or not, was a question to be settled between the attaching creditors and the assignee, and not between them and this defendant.

5. That the plea of bankruptcy, while it admits the debt, goes only to the protection of the defendant from a judgment *in personam*, or against any estate to be acquired by him *in futuro;* and the plaintiff, by his replication, admits this plea, and prays judgment only to be levied of the property taken under the attachment. The court then ought to give such judgment as prayed for by the plaintiff, without stopping to inquire whether the property attached, is bound by the attachment, or not. If there is any so bound, the plaintiff ought to have it. If there is none, the plaintiff will get nothing, and no harm is done.

6. That in doing so, the court need not be afraid of doing injustice; for their decision will not conclude the assignee of the bankrupt. His rights will be unimpaired; for if the *lien* created by the attachment law is not saved by the bankrupt law, the assignee may, and by force of the bankrupt law has ample power and means, to establish his rights.

7. That on the argument of this demurrer, the court could not go out of the pleadings to settle any incidental question not raised by the issue; and that the only question on the demurrer was, whether the plaintiff was entitled to such judgment as he had prayed for; whether the *lien* created by the attachment law was destroyed by the bankrupt act, or not, was an incidental or collateral question, not involved in the issue, and

to be settled hereafter between other parties, if it became neces-
sary to do so.

8. That the court, on this argument, could not inquire into
the legal effect of the bond given by the defendant and his secu-
rities, conditioned to return the goods, if " judgment should be
rendered for the plaintiff." That question could only arise be-
tween the assignee of the bankrupt and the attaching creditors,
or between them and some third person claiming as a purchaser,
or assignee of the debt, after the bond given.

9. But, if otherwise, yet it is insisted that, as between the law,
or the Court, and the defendant, or, as between the plaintiff in
attachment, and the defendant, the goods do not become dis-
charged from the lien, by the defendant's giving bond, &c.
They are still, to a certain extent, in the custody of the law,
somewhat as a defendant who has given bail, is said to be in
the custody of his bail. This is manifest by the very condition
of the bond. It is not that the defendant, " if judgment is
given for the plaintiff," will pay the debt; but, that he will re-
turn the goods, &c. The bond is given to the Sheriff as a bail
bond is, and the defendant is bound to re-deliver to him the spe-
cific, identical articles ; and if returned to him, the Sheriff is
bound to receive them in discharge of the bond, and to levy
upon and sell them to satisfy the debt.

10. Hence it is insisted, that although by giving the bond the
defendant regained the possession and use of the property, pend-
ing the suits discharged from the liens created by the statute ;
yet as between him and the plaintiff in attachment, he has by his
own bond, created a new quasi lien upon them, for the satisfac-
tion of the debt (if any) due the plaintiffs ; and therefore the
defendant is estopped, as between him and the plaintiff, from
denying by plea or otherwise, the plaintiff's right to have his
debt levied upon and raised out of those goods and chattels.

11. Again : If the giving of the bond discharges the lien ;
and if the court cannot give judgment that the plaintiff have
his debt levied of the goods, because the lien is gone, then we
have this absurdity, viz : a defendant in attachment, whose goods
have been attached, takes the benefit of the insolvent law. He
then gives bond, and pleads his discharge as an insolvent debtor ;

Vreeland v. Bruen.

the plaintiff replies, admitting the discharge, but prays a special judgment as in this case; nevertheless, the court would be compelled to give a general judgment for the defendant, with costs, thereby discharging the defendant, not only from his admitted debt, but from his own voluntary bond, and permitting him to retain the goods and chattels in the bargain.

12. The attachment act, by its own terms, in the 32d section, is "to be most liberally construed for the advancement of justice, and the benefit of creditors." The court ought not, therefore, unless imperiously required by the provisions of the act, to give it such a construction as to produce such a result as last mentioned. It would be equivalent to saying, that the defendant, by giving bond, discharges the *lien;* and then, by pleading his bankruptcy or insolvency, discharges his bond. This would certainly be contrary to the design and spirit of the insolvent law.

*Finally:* If by giving bond, the goods are absolutely discharged from the *lien* created by the attachment act, the bond is substituted in the place of the goods. It was given for the benefit of the plaintiff in attachment; he has a *lien* upon it, and if a debt is proved or admitted, the plaintiff ought to have such judgment as will give him the benefit of the bond.

*Vroom,* and *Pennington,* contra.

1. The pleadings in this case do not show that any real estate was attached; as to the personal estate, the lien is gone when the bond is given; it comes in lieu of the lien. *Rev. S.* 54, § 26; *El. Dig.* 22, § 12—p. 26, § 30. The writ and all proceedings thereon are set aside.

2. Plaintiff seeks judgment to get hold of lien; but lien of no use unless debt be established—*that* is discharged by bankrupt law. If debt is $5000, and a lien obtained on property worth $500, discharge is good, *certainly,* for all beyond the amount of lien; how can the debt be divided, or how prevent recovery for the whole? Execution may be regulated and modified, but judgment must be for the whole amount, including the excess over amount of lien. Proceedings in this action are to

recover the debt, for which see the declaration. If the direct object of it was only to enforce or preserve lien, it might be different. 5 *Law Reporter* 55, 351, 443 ; *7th do.* 78, 86, 122.

3. Where an attachment is dissolved by *personal appearance,* it is no longer a proceeding *in rem.* (*a.*) The proceedings and recovery are *general,* and judgment must be so, too. The judgment is not against the property attached—the bond being in lieu of lien on personal property destroys that—besides how could a levy under judgment. be made on *rights and credits* attached ? Where attachment is set aside by appearance no lien is preserved by statute ; it only prevents sale by defendant. *El. Dig.* 27, § 31.

4. The replication in this case does not answer the plea.


*Bradley,* in reply.


The question is, whether an attachment under the New Jersey statute, executed before defendant became bankrupt, is such a lien as is saved by the proviso in 2d section of bankrupt law of United States passed Aug. 19, 1841.

I. Is it a lien at all by law of New Jersey?

See *Elmer's Dig. Title Attachment, Pl.* 5 & 31 ; *Lummis* v *Boon,* 2 *Penn.* 734 ; 7 *Halst.* 33 ; *Mount* v. *Ely,* 2 *Halst.* 83.

---

*Note* (*a.*) It has become the habit of the common law lawyers and judges to call an attachment a proceeding *in rem,* and it may *therefore* be proper now so to call it. But it is to be regretted that this departure has been made from the expressive and appropriate meaning of the term in the civil law courts from whence it was borrowed. A proceeding and judgment *in rem* " on the matter," " upon the question," as in a question of *marriage, divorce, administration, prize, forfeiture,* &c. is one that settles the "matter," when the proper parties are cited, conclusively against all the world, though not cited. (*Duchess of Kingston's Case*). It is generally commenced by personal monition, and is in its very definition, fundamentally distinct from a suit in which a *personal* debt is adjudicated on, and the *satisfaction* only, out of " the property," or " thing," the same as by ordinary fi. fa. Under the New Jersey attachment act, which repeatedly uses the expression, "judgment *against the defendant* by default," it seems singularly inappropriate to call the proceeding one *in rem.* See 2 *Smith's L. C.* 439–40.

Vreeland v. Bruen.

Formerly it was quashed, and lien gone, on defendant's entering appearance. But act of 1820, *El. Dig.* 27, § 31, altered this, and preserved lien for judgment of plaintiff and other creditors—this (sect. 31) leaves no doubt as to the real estate. (*a.*)

No doubt as to personal estate. The bond is given for forthcoming of goods (§ 30) like bond of garnishee § 6. See 5 *Halst.* 60. *Reeves* v. *Johnson*, 7 *Halst.* 29, does not conflict with this. This proceeding is *in rem*, the property in custody of the law. 1 *Harr.* 102 ; 3 *do.* 153, 112. If attachment is by our law a lien, bankruptcy cannot defeat it. The proviso in § 2 of bankrupt law expressly saves all liens "which may be valid by the laws of the States respectively."

And the State courts are the most proper tribunals to determine what are liens by virtue of their own attachment laws, though on this some conflict of opinion. *Kerlin's Case*, 3 *Howard*, 327 ; *Peck* v. *Jenness*, 8 *Law Reporter*, 344 ; 3 *Howard*, 322 ; *Gordon's Dig. of* 1837, *p.* 114, *art.* 500 ; 3 *Howard;* 318, *Christy's Case.*

3. It is objected that an attachment though a lien by the state law, is not so under the *policy* of the bankrupt law. *Foster's case*, 5 *Law Rep.* 55 ; *Story, J.* But the policy of the bankrupt law is to save vested rights and securities. 2 *Story's R.* 495 and 564. For the different policy of the English Bankrupt Law, see 21 *Jac. I, c. xix.* § 9.

It is argued on the other side, that the lien of an attachment is not a common law lien, nor an absolute lien, but only a conditional one, on condition that judgment is rendered for plain-

*Note* (*a*). QUERE. Can a *writ* of attachment be a lien on lands by section 8 of Attachment Act, *R. S.* 49, after *the writ* itself, and *all proceedings thereon*, have been *set aside* under ₹ 26 ? If so, will it not yet be a lien on goods and *credits* by virtue of ₹ 7 ? Can *the lien* of ₹ 8 be taken advantage of except by proceeding *under the attachment*, and by an auditor's deed under ₹ 37, and by its stringent provisions? Does not the lien on lands of a judgment obtained after personal appearance, begin at the entry of judgment, as in other cases, and ₹ 8 in that case operates by avoiding all alienations after attachment, as against attachment creditors? Should a fi. fa. on such judgment be special, to sell *specific lands* attached, or general, to sell all lands of defendant at date of judgment?

tiff; and when debt is discharged by bankrupt law, conditions cannot be performed, and lien gone; but this is answered by shewing that we can take a special judgment. *Buxton* v. *Mardis*, 1 *T. R.* 81; *Steward* v. *Dunn*, 11 *M. & W.* 63.

It is said the debt is discharged; so is a bond secured by mortgage, and there is nothing in the objection that a special judgment might be prosecuted against the person. How could it be done?

4. Examine the decisions on this point, whether the attachment lien is saved by the proviso. *Foster's case,* 5 *Law Rep.* 55, *Story, J.; Muggridge's case,* 5 *Law Rep.* 358, *Story, J.; Allen & als.* 5 *L. R.* 362, *Conkling, J.; Downer* v. *Brackett,* 5 *L. R.* 392, *Prentiss, J.; Houghton* v. *Eustis,* 5 *L. R.* 505, *Thomson, J.; Cook's case,* 5 *L. R.* 443, *Story, J.; Rowell's case,* 6 *L. R.* 300, *Prentiss, J.; Mitchell* v. *Winslow,* 6 *L. R.* 352; *Kittredge* v. *Warren,* 7 *L. R.* 77, *Sup. Ct. N. H.; Bellows* v. *Peck,* 7 *L. R.* 119, *Story, J.; Kittredge* v. *Emerson,* 7 *L. R.* 312; *Waller* v. *Beet,* 3 *Howard* 111; *Ingraham* v. *Phillips,* 1 *Day* 117.

The opinion of the court was delivered by

RANDOLPH, J. The second section of the bankrupt law, passed by Congress August 19, 1842, contains this proviso,— "that nothing in this act contained shall be construed to annul, destroy, or impair any lawful rights of married women or minors, or any *liens,* mortgages, or *other securities* on property, real or personal, *which may be valid by the laws of the States* respectively, and which are not inconsistent with the second and fifth sections of this act." . No difficulty arising in the case now under consideration, under the second and fifth sections of the act, the only questions for the consideration of the court are, 1st; Is the lien set forth in the replication of such a character as to be valid by the laws of this state, and within the contemplation of the above proviso, and 2dly, If there be such lien, to what extent may the plaintiff avail himself of its beneficial effect?

*In the first place,* Is the lien created by an attachment against an absent or absconding debtor under the laws of this state,

saved by the proviso in the bankrupt act? Much learning has been elicited in the discussion of this subject, as to the appropriate meaning to be given to the term *lien*, and much has been said as to the different kinds of liens, and whether the proviso is to be construed as applying to all, or to what species of liens, and on this point very able judges have differed in their opinions. The case of *ex parte Foster*, 5 *Law. Rep.* 55, is the first case that has come under my observation, and probably the very first which came up for judicial consideration, as it was decided in April, only a few months after the passage of the bankrupt law. In this case, the late Judge Story decided that an attachment under the laws of Massachusetts, did not create such a lien as was intended in the proviso of the bankrupt act. It appears from the report of the case, that some of the creditors of Foster sued him by attachment, and seized certain of his goods and merchandize, which were retained by the Sheriff to answer to the judgment of the creditors when obtained. Foster soon after filed in the district court of that state his petition for the benefit of the bankrupt act, and then applied for an order on the state court to stay proceedings on the attachment, lest judgment should be obtained, and the property attached taken in execution before petitioner could obtain his discharge : the case was adjourned to the Circuit Court of the United States, and the whole subject of this proviso and its saving effect, was very fully discussed in a learned opinion of Judge Story, in which he granted the application, and decided that the attachment had no such lien as the bankrupt act excepted out of its general operation, and also that a United States Court had the power to restrain the proceedings in a state court, in a matter of this nature—the grounds of this decision are fully set forth in the opinion. The next case in which the question was raised, is that of *Muggridge & al. Bankrupts*, 5 *Law Rep.* 351. This was in the New Hampshire Circuit, and only a few months after the decision in Foster's case. The subject comes up in rather a different shape from the preceding case ; here certain property of the bankrupts was attached, and by various agreements between them and the plaintiffs, judgments were obtained by default. Previous to this the defendants had been deemed

bankrupts, and the assignees obtained an injunction prohibiting the plaintiffs from levying their executions on the defendants' property. After argument, the injunction was dissolved by Judge Story, on the ground that the proceedings and judgment under the attachment being with the consent and agreement of the bankrupts, created an equitable lien, which remained in force, notwithstanding the decree in bankruptcy. Next in the order of time is *the matter of Cook*, 5 *Law Rep.* 443, in the Massachusetts Circuit, in which Judge Story decided, that when property was attached, and judgment obtained thereon, and after that, defendant filed his petition for the benefit of the bankrupt laws, the right of the attaching creditors was fixed, and by the laws of Massachusetts was a permanent lien for thirty days —the injunction against the judgment creditors was dissolved accordingly. Some little time after these decisions, the case of *Kittredge* v. *Warren*, 7 *Law Rep.* 77, came before the Superior Court of the State of New Hampshire, upon a state of the case in an action of assumpsit pending in said court. Here the court, Parker, C. J., delivering the opinion, decided directly contrary to the case *ex parte Foster*, that an attachment *bona fide* obtained and levied before any act of bankruptcy or petition by the debtor is a valid lien, and within the proviso of the bankrupt act, and that the lien being saved, the means of making it effectual are also saved, and if the discharge is pleaded, plaintiff may reply the existence of the attachment, and the court will render a special judgment, and execution against the property attached. A few months after this decision, precisely the same question was presented to the New Hampshire circuit, Judge Story presiding, in the *matters of Bellows & Peck*, 7 *Law Rep.* 119. In the consideration of this case, the court reviewed and reaffirmed the decision in *ex parte Foster*, and of course decided the points directly contrary to the opinion of the Superior Court in that state. The Judge, in pronouncing his opinion, added some pretty decided remarks as to the power of the United States Courts to compel obedience to their decisions by injunction and attachment for contempt, the decisions of the highest state courts to the contrary notwithstanding. This opinion not only aroused up a spirited discussion on the question

of state rights, and produced some excitement and action on the part of the Legislature of New Hampshire, but the Superior Court of that state, was shortly afterwards, called on in *Kittredge* v. *Emmerson*, 7 *Law Rep*. 316, to review it, as well as the grounds of their own former decision, when the court, Parker, C. J., delivering the opinion, reaffirmed the doctrine of *Kittredge* v. *Warren*, and deny at length, and in pretty strong terms, the power of the United States courts to stay proceedings in state courts by injunction. Thus, in one or two of the states, the decisions of the federal and state courts stand directly in collision. The same point, however, has been considered and decided in various other cases which have arisen in the courts of other states. Thus in the *matter of Allen and others, bankrupts*, 5 *Law Rep*. 362 : the District Court of New York, Conkling, J., held that the word "*lien*," in the second section of the bankrupt act, embraces equitable as well as legal liens, and that the meaning and application of the term are to be ascertained by the laws of the state, where the question arises. An injunction was refused in this case to stay proceedings on a creditor's bill in the Court of Chancery of New York, against one who, after the suit in Chancery was commenced, had filed a petition, and obtained a discharge in bankruptcy—the suit in Chancery being a lien in that case, according to the law of the state. The learned Judge who decided this matter, says his decision is not to be understood as in conflict with *ex parte Foster ;* but his definition of the term lien, under the bankrupt act, is not quite as much restricted as that of Judge Story. The same point was decided in the Vice Chancellor's Court in the city of New York, in *Smith* v. *Blacket & al*., the court holding that the plea of discharge in bankruptcy to a creditor's bill, did not exonerate the fund from the lien acquired by the filing of the bill. In the State of Vermont, the same subject has undergone judicial investigation, in *Downer & al*. v. *Bracket & al*., 5 *Law Rep*. 392. Judge Prentiss holding the United States District Court, determined that a lien under an attachment was embraced by the proviso in the bankrupt law. So in *Houston & al*. v. *Eustis & al*., 5 *Law Rep*. 505, the late Judge Thompson holding the United States Circuit for Vermont, gave the same con-

struction to a lien acquired under an attachment; and I think there have also been one or two other cases in Vermont, in which the term lien has received the same construction. In Pennsylvania, the United States Circuit Court, Baldwin and Randall, JJ., in Dudley's case (1 *Pa. Law Jour.* 303), decided that the property of a petitioner for the benefit of the bankrupt law, was not divested till the decree in bankruptcy; and that till then it was subject to judgment and execution. The court also examine very fully the case of *ex parte Foster*, and disagree to the doctrine of Judge Story in that case, particularly as to the power of the United States Courts to stay proceedings in State courts, by injunction. In the 63d section of the bankrupt act of 1800, it is provided that " nothing, &c. shall, &c. invalidate or impair *any lien* existing at the date of the act." In construing this clause the Supreme Court of Connecticut held, in *Ingraham* v. *Phillips*, 1 *Day* 117, that this clause embraced a lien under an attachment in that state. To these several authorities I will add the opinion of Chief Justice Hornblower (*a*) in this case as to the effect of the term lien, the opinion having been written prior to the decision of some of the cases already referred to, but never delivered in the Circuit Court for which it was prepared; but having been submitted to this court by way of argument, I fully concur with the opinion on this point, and would adopt it as my own view of the case; but it embraces other matters not convenient to be separated.

Without repeating the arguments of the learned jurists who have investigated this subject, I cannot but think that the proviso itself furnishes its own best exposition. By this it appears that neither the decree, or anything in the act, " shall be construed to *annul, destroy, or impair any* * * * *liens,* mortgages, or other securities on property, real or personal, *which may,* be *valid by the laws of the States respectively.*" Were it not that great minds have thought otherwise, I would have supposed that the matter was too clear for argument, and that the proviso, in letter and spirit, embraced any liens valid by the laws of the state, whether legal or equitable, arising under contract, or otherwise, or whether perfected by judgment, or only

---

(*a*) See opinion at the end of this case.

inchoate, but valid until perfected by judgment. If the State law gives validity to the lien, it comes under the proviso, and it is of no consequence in what way it arises, or whether it comes within the strict technical definition of a lien at common law, or in the equity or the admiralty courts, or whether it arise by the act of the parties themselves, or by the mere operation of law or the rules and practice of the court. Reference to treatises, or to foreign decisions on the question of liens, or to their different kinds and distinctions, can be of little use ; for after all we must come back to the state law, and inquire if it be valid by that. By the 5th section of the attachment act of 1798, *Rev. Laws* 356, the writ shall *bind the property* and estate of the defendant, from the time of executing the same, and by the 7th section, the goods, &c. so attached were to be kept by the Sheriff in order " to answer and abide the judgment of the court," unless the garnishee give bond with surety for the forthcoming of the goods, or their appraised value, to answer the same purpose. No doubt but under these sections the attachment was a good and valid lien ; so it has been uniformly considered and so decided by this court. The phraseology *shall bind* is the same as that applied by statute to the operation of a judgment on lands. *Rev. Laws* 430 § 2. No judgment *shall bind*, &c. but from the time of entry ; yet in *Lummis* v. *Boon*, 2 *Penn.* 734, the court give validity to the lien of an attachment over that of a judgment, because the former was served before the latter was obtained. In *Reeves* v. *Johnson*, 7 *Halst.* 34, the judgment was first entered, then the attachment served, and then execution issued on the judgment. Ewing, C. J. " the judgment and attachment are both *liens*—the former the eldest." The Sheriff has a lien on the personal estate in his hands ; he could maintain suit for it if divested of the possession, and the lien would still continue in the hands of the garnishee, notwithstanding his bond ; and when judgment is obtained on the attachment, the court will order the auditors to sell the property attached, and sometimes, in case of perishable property, it is directed to be sold on the return of the writ. Prior to the supplement to the attachment act of 1820, the attachment was considered only as the means to compel the ap-

pearance of the absent or absconding defendant, and in case he did not appear, the property was directed to be sold for the benefit of the plaintiff and other applying creditors; but if he appeared and entered into special bail, the writ and all proceedings thereon were set aside or dissolved, as it is usually termed; and the defendant being in court the plaintiff and creditors proceeded against him as if by capias at common law, taking no further notice of the property attached. By the 2d section of the supplement of May 30, 1820, if the defendant appeared, in addition to the recognisance of bail, he was required to give bond with surety to the sheriff for the return of the goods, chattels and effects seized and taken by the writ, in case judgment be rendered for the plaintiff; and in case of the breach of the condition of the bond, the sheriff was required under the direction of the court to assign over the bond for the benefit of the plaintiff and applying creditors. The 3rd section of the same act prohibits the defendant from conveying away his land or real estate after the issuing the writ of attachment, but provides that " the writ of attachment shall immediately on the issuing thereof become and remain *a lien* on the said lands, &c." Thus the statutes remained when the controversy arose, except that by the supplement of Feb. 22, 1839, 3 *Harr. St. Laws;* 295–6— the clerk was required, upon sealing a writ of attachment, to enter the same in a book to be procured for the purpose, and so much of the law as required the defendant to enter into special bail, was repealed.

The question now arises, whether after the defendant entered into bond and took the property, it still remained subject to the lien of the attachment. In 5 *Halst.* 60, this court directed the rule setting aside the attachment to be entered " saving all liens," and the real estate by the express words of the statute would remain subject to the lien till the plaintiff and applying creditors were satisfied of their just debts, or judgment should be rendered against them. In the present case, besides the real estate attached, bond was given for the return of the goods, chattels, and credits; do these still remain subject to the lien of the action after the writ and proceedings thereon have been set aside? I am unable to find any sufficient reason

Vreeland v. Bruen.

for coming to that conclusion. The goods were first seized to compel the defendant's appearance; until that was effected, or judgment and sale, the lien continued; but when the defendant appeared and entered into special bail, the lien was discharged, and the plaintiff and applying creditors were compelled to look to the defendant and his bail. When the Legislature changed the law, and required a bond with surety for the forthcoming of the property, it was only that it might be levied on by the execution, and not that it might be sold by the mere order of the court, without a new seizure or lien, as if the defendant had never appeared. The property is given up, and no power remains with the Sheriff to reclaim it, or even to hold or dispose of it, under the original lien. It must necessarily become subject to the defendant's sale or disposition, liable to any new liens that the owner or the law may create, or subject to be seized and sold under execution, without any power to prevent it. Suppose, after the bond was given, a judgment creditor should cause the property to be sold by execution, could this court, if applied to, stay the sale, or order the Sheriff to pay the money over for the benefit of the attachment? No, the answer would be; you must look to your bond; and even if the bondsmen were all insolvent, you must still look to your bond or to the Sheriff who took it. Suppose, instead of the Sheriff, the defendant himself, or since his discharge as a bankrupt, his assignee should attempt to sell the personal estate levied on, could he be restrained at the instance of the plaintiff? I think not; because his lien is divested, and other liens have arisen, leaving the party to his bond. The fact that the third section continues the lien on the real estate, so far from implying that it is continued on the personal property, proves the reverse. Why provide 'in the third section for the continuance of such lien? Because it had not before been provided for, it could not be reached by a bond for its forthcoming, neither it or its value could be secured by a bond, but a lien could be continued by statute; and if it required the statute to continue it after the writ and proceedings were set aside, then clearly, without a statutory provision, the original lien could not hold either on the

real or the personal property attached. But the second section neither continues the lien on the personal property or prescribes the means by which it may be holden or resumed ; and as there was no lien on the personal property at the time of filing the replication, of course the proviso in the bankrupt law does not apply, and judgment must be rendered for the defendant if that were the only property attached ; but it appears from the inventory that there was also some real estate levied on, and as that could not be included in the bond, and the lien thereon is still valid by the laws of this State, although the attachment is set aside, plaintiff has a right to the benefit of this property notwithstanding the discharge of the defendant. Judgment must therefore be rendered against the demurrer, and a special judgment in favor of the plaintiff, as in the case of *Kettredge* v. *Warren*, to be satisfied only out of the real estate attached and held by lien.

[The following opinion of the late Chief Justice HORNBLOWER, referred to by RANDOLPH, J. in the foregoing opinion of the Supreme Court, has, by his permission been obligingly furnished to the Reporter: a part of the opinion as originally delivered, is omitted.]