Barrett, J.
—In the case of Goodwin v. Sharkey, decided on the 17th inst., I held that property which had been conveyed by a bankrupt in fraud of his creditors prior to the passage of the bankrupt law, became vested in the assignee in bankruptcy by the force of that act and by virtue of the proceedings thereunder (Ante, 64).
The question now arises as to the effect of these proceedings upon a judgment creditor’s suit, commenced before the passage of the act, for the purpose of setting aside conveyances alleged to be fraudulent, and of reaching the property transferred thereby.
The facts are these : On the 20th of September, 1S66, tire plaintiffs recovered a judgment in the superior court of this city against the defendants, Siegfried Isidor and Julius Blumenthal, for the sum of $730.42. Shortly prior thereto these defendants made an assignment of their property to the defendant, Moritz Isidor. Execution having been issued upon that judgment and returned unsatis *70 fied, this suit was commenced on the 30th of October, 1866. The complaint charges fraud in the making of the • assignment, and seeks to set it aside and obtain the application of the property so conveyed.to the payment of the judgment. Issue was joined, and the cause has since remained untried upon the equity calendar of this court. On the 10th day of February, 1868, the judgment debtors, Siegfried Isidor and Blumenthal, obtained their discharge in bankruptcy from the district court of the United'States for the southern district of New York; and it appears that in the proceedings which resulted in that discharge the plaintiffs appeared, proved their claim, and opposed the discharge. It does not appear whether the plaintiffs, in proving their debt, referred to the present suit or to the lien which they claim to have acquired thereby.
A motion is now made for leave to file a supplemental answer, setting up these facts ; and it is resisted solely upon the ground that the discharges in bankruptcy are no bar to the present action. The discussion having been solely upon the merits of the proposed defense, it is proper that the effect of the discharges should now be considered.
The weight of authority in this State would seem, upon a casual examination, to favor the position that the mere commencement of an action in the nature of a creditor’s bill gives to the creditor an equitable lien upon the property and things in action of the debtor, whether in his hands or in the hands of a fraudulent transferee (Storm v. Waddell, 2 Sandf. Ch., 494, where the numerous cases are cited and fully discussed; Insurance Company v. Power, 3 Paige, 365 ; Roberts v. Albany & W. S. R. R. Co., 25 Barb., 662 ; Macy v. Jordan, 2 Den., 570 ; Field v. Sands, 8 Bosw., 685). The rule would, in my judgment, be more satisfactory if confined to- cases where the disposition of the property sought to be reached had been restrained by injunction, or where the property itself had been placed in the hands of a receiver pending the suit. Indeed, it was suggested in Storm v. Waddell, above cited, that “in regard to chattels subject to execution the lien *71 may depend upon the receivership,” but in respect to equitable interests and things in action, it was distinctly held that the lien was acquired by the mere commencement of the suit. The rule is not elsewhere so broadly stated; and I think that its application to strict creditor’s bills, where, upon filing the bill, an injunction was taken out and served with the subpoena to answer, is all that is fairly deducible from a careful examination of the o',her ■ cases cited. Where the action is simply to set aside an alleged fraudulent transfer, the lien, in the absence of any restraint by injunction upon the fraudulent transferee, must be purely theoretical. As a fact, it is dependent upon success in the action.
Considering, then, that a lien charges the specific property, and follows it into the hands of whomsoever it may come, it is apparent that the effect of extending the rule to the mere commencement of such an action, without any accompanying act, either placing the property in the custody of the law, or staying its disposition, would be disastrous to the rights of innocent third persons. It would be more reasonable in such cases to limit the creditor to an equitable right to priority in case of success, when, with the judgment setting aside the transfer, the lien would naturally and properly attach. Then the remedy in case of a disposition of the property prior to the acquisition of the lien,—that is, prior to the decree,— would be against the wrongful disposer, and not against the property itself, and thus third parties as well as the creditor would be protected. This question as to the existence of a lien becomes important in view of the provisions of the bankrupt lav/ preserving intact all liens existing in good faith upon the property of the bankrupt. It was held, under the bankrupt act of 1841, that where a lien had been acquired by the proceedings in a creditors’ suit, that lien was not impaired by the discharge and personal exoneration of the bankrupt, but that the suit might proceed in rem against the property and things in action which were the subject of the lien (Lowry v. Morrison, 11 Paige, 327 ; Matter of Allen, 5 Law Rep., 362, and *72 cases above cited). But the plaintiff’s difficulty here is two-fold. Not only is the existence of alien, within the meaning of the bankrupt law, exceedingly doubtful, but there is also a grave question as to whether the lien, assuming it to have existed, was not waived by the proving of the debt in the court of bankruptcy. In Haxton v. Corse, 2 Barb. Ch., 531-2, the chancellor (affirming the vice-chancellor, in 4 Edw. Ch., 585) held that the complainants, by going into the bankrupt court subsequent to the filing of their creditors’ bill, and there proving their debt and opposing the bankrupt’s discharge, had abandoned the lien acquired by their proceedings in chancery; that the retention of the lien under such circumstances was utterly inconsistent with the intent and meaning of the bankrupt act, and that by the mere proving of the debt the creditors’ bill was absolutely relinquished, surrendered and discontinued. This was a construction of provisions very similar to those contained in the present bankrupt law. The rule is the same in England ; and under the bankrupt act of that country, where parties have proved their debts upon the footing of holding no security, they have been repeatedly ordered to deliver up to the assignee in bankruptcy the property on which they had a lien (4 Younge & Collyer, 119 ; Exp. Solomon, 1 Glyn & Jam., 25 ; Exp. Spottiswood, 1 Fonb., 20 ; Exp. Hornby, Buck B. C., 351 ; Exp. Downes, 1 Rose, 96 ; Exp. Eggington, Montagu, 72). Our present bankrupt law, section 30, permits the creditor t) prove his debt for the balance which may remain after deducting the value of the property held by him as security, to be ascertained by agreement between him and the assignee, or by a sale under the direction of the court; but it is quite clear that, if the creditor prove his full claim without reference to his lien or security, and without apprising the bankrupt court of its existence, such an act would be a waiver of the lien, and a relinquishment of the security to the assignee. Otherwise, the creditor, besides realizing on the collateral, might receive a dividend upon his entire debt, and thus reduce the dividend to which the other creditors would be *73 entitled in case Ms debt had been placed upon a proper footing. If the plaintiffs in the present case proved their full debt without disclosing or referring to the lien which is claimed to have resulted from the commencement of this suit, then, under section 21, that lien is gone, and this suit is relinquished, discontinued and discharged ; and even if these proceedings were disclosed, the question is still so serious that the right to interpose the supplemental an-' swer is unquestionable.
The motion must be granted, with leave to plaintiffs to discontinue without costs.